SCHOOL DISTRICT NO. 15 v. COMM'RS OF ALLEN CO.

1. TAX-SALE CERTIFICATE, *When not Void*. The mere fact that a railroad corporation is a purchaser of certain tracts of land at a tax sale, does not prove that such purchase is *ultra vires*, and the tax-sale certificate in the hands of the corporation null and void, so as to release the county from the obligation to refund the money in case the sale proves to be invalid.

2. SEC. 145, CH. 34, LAWS OF 1876, *Construed*. The words, "any error or irregularity," in § 145 of ch. 34 of the Laws of 1876, include not merely irregularities in the tax proceedings, but also jurisdictional defects, such as that the lands are not subject to taxation.

3. ———— Section 147 of said ch. 34 applies when the sale was set aside, and the moneys refunded by the county subsequent to the taking effect of the section, although the tax sale was originally made prior thereto.

*Error from Allen District Court.*

ACTION brought by the *Board of Commissioners of Allen County*, against *School District No. 15*, in said county, to recover from said district the proportion of certain taxes which it had received out of the county treasury on certain government lands not taxable, which taxes had been refunded by the county. The opinion states all necessary facts. Trial at the June Term, 1878, of the district court, and judgment for the plaintiff. The defendant district brings the case here.

*Cates & Keplinger*, for plaintiff in error.

*W. H. Slavens*, county attorney, and *Peter Bell*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: Prior to 1875, certain tracts of land in Allen county, and within the limits of the school district, plaintiff in error, were sold for non-payment of taxes. A railroad corporation was the immediate purchaser, at such sales, of some of the tracts, and the assignee of the purchaser of the others. The subsequent taxes up to 1876 were paid, and indorsed on the sale certificates. Out of the taxes thus received into the county treasury, the amount called for by the school-district levy was duly paid over to the district. In 1876 and 1877, the certificates were presented to the county clerk, who refused to make deeds thereon, because, as it is now conceded was the fact, the lands were government lands and not taxable, and indorsed such refusal on the certificates. Thereupon the treasurer refunded the money paid, to the holder of the certificates, and the county commissioners brought this action to recover from the school district the proportion it had received. Sec. 147 of ch. 34 of the Laws of 1876 in terms authorizes such recovery, but three principal objections are made thereto by the school district. It is insisted, in the first place, that the purchase of lands at tax sales by a railway corporation is *ultra vires;* that therefore the sale certificates were void, and the county under no legal obligation to refund. None of the circumstances under which these tax purchases were made are shown. The single fact appears, that the purchaser was a railway corporation. There might be an inference, though there is no direct concession, that these lands were within a supposed grant from the government to the railroad. Under those circumstances we do not think the objection well taken. For while dealing in tax titles is outside of the powers of a railroad corporation, the purchase of one or more tax certificates is not necessarily *ultra vires.* Such a corporation may purchase and convey real estate for the purpose of aiding in the construction of its railway. It may receive vol-

untary grants of land for the same purpose. (*McClure v. Gulf R. R. Co.*, 9 Kas. 373.)

It may within the same powers perfect an imperfect title, or enlarge a limited interest in real estate by a purchase of a tax-sale certificate thereon, or it may receive a donation of tax titles; so that the mere fact that a railway corporation is the purchaser and holder of a tax-sale certificate, does not necessarily show that it is void. But even if the purchase were in this case an act *ultra vires*, could the county retain the money while the corporation took nothing by the purchase? Would the transaction stand as to the grantor and fall as to the grantee? Could the former conveying nothing retain the price, while the latter receiving nothing forfeits what it has paid? It is, however, scarcely necessary to pursue this inquiry further — though see the *Citizens Street Rld. Co. v. State Board*, 47 Ind. 407; *The N. W. U. P. Co. v. Shaw*, 37 Wis. 655; *The W. A. Co. v. Barlow, et al.*, 63 N. Y. 62.

A second objection is, that the county was under no legal obligation to refund, because the defect which vitiated the sale was not an "error or irregularity" within the meaning of those words as used in the statute concerning refunding. The lands, say counsel, were not taxable. This was a case of lack of jurisdiction, and not an error or irregularity in the tax proceedings. We do not think the words are here used in any such limited sense. Outside the fact that the general scope of the section (§ 145, ch. 34, Laws 1876) seems to indicate that the words are used in the broadest sense, and to cover any defect, jurisdictional or otherwise, we find that in the succeeding section (which provides for a return of the money after a conveyance has been made) the language is open to no doubt, and includes all cases in which the sale is found to be invalid. The legislature can hardly have intended that after a conveyance the money should be refunded in all cases of invalid sales, while before conveyance it should be refunded only in case the defect rendering the sale invalid was not a jurisdictional defect. The idea obtaining in the

two sections is, that whenever the county has sold when it ought not to have sold, the purchase-money shall be refunded and the sale set aside. (*Comm'rs of Lyon Co. v. Goddard, ante,* p. 389.)

A final objection upon which great stress is laid by counsel is, that to sustain the judgment in this case, retrospective force must be given to said § 147, and that there is nothing to indicate that the legislature intended the section to have such operation. At the time of these sales, the receipt of the money into the county treasury, and the payment to the school district, as counsel say, there was no statute authorizing any recovery from the district. Was it the intent of the legislature that the district should return moneys which years before it had received and expended? Ordinarily, statutes are prospective only in their operation, and before any retrospective force is given to them, the legislative intent therefor should be clear. We do not think the objection well taken. Sections 145 and 146, which provide for the return of money from the county to the tax purchaser, are substantial reënactments of prior sections which had been in force since 1868. So that at the time of all these proceedings, the county was under the same obligation to return the moneys received. No new liability was created as against the county by the act of 1876. But the county, in collecting and paying over school-district taxes, acts simply as an agent without compensation. It is merely the channel through which the taxes pass from the tax-payer to the district. And compelling it to make good to the tax-payer all moneys by him paid, was compelling it to pay out of the general fund moneys which in equity should be paid over by the district which had received and appropriated them. It was district money which the county was returning, and it would be gross injustice to compel the tax-payers of the county living outside of the district thus indirectly to aid in building its school house and supporting its schools. There was certainly a moral duty on the part of the district to return to the county the money which it had been compelled to pay

for it, and it may well·be doubted whether there was not also a legal obligation which could be enforced.

Again, the tax sale was not set aside, nor the moneys refunded by the county, until after said § 147 was in force. Until the county had been called upon to refund, it could have no cause of action against the district. The gist of the cause of action is the payment by the county of money which in equity and good conscience the district ought to pay. And this payment was not made until long after the section was in force. Until such payment, there was neither moral duty nor legal obligation upon the district. So far as this section is concerned, only prospective operation is given to it. Nothing that it provides for was done before it took effect. "When a tax sale shall be set aside as invalid, and moneys and interest have been refunded thereon," is its language. All this post-dated the statute. How then can it be said that retrospective force is sought to be given to the section?

We think the ruling of the district court was correct, and the judgment must be affirmed.

All the Justices concurring.