The opinion of the court was delivered by
Hokton, C. J.:
This was an action originally commenced by John Geis & Co., in the district court of Lincoln county, against the board of county commissioners of that county, to recover the moneys paid into the treasury of that county on eighty-four tax-sale certificates. The petition contained eighty-four causes of action, drawn in substantially the same form. At the March term, 1878, of the district court, judgment was rendered ’against the board of commissioners of that county. The board brought the case to this court, and at our July term in 1879 the judgment was reversed. (¡23 Kas. 137.) On the return of the case to the lower court, upon leave granted an amendment to the original petition was filed, in the following words:
“For amendment to the petition filed herein, and to avoid repetition for an amendment to each and every cause of action stated therein, the said Charles E. Faulkner says: That on the— day of September, 1879, said John Geis and Wm. R. Geis, partners as John Geis & Co., made an assignment for the benefit of creditors, and that he, the said Charles E. Faulkner, is the duly chosen, qualified and acting assignee of said John Geis & Co.; that at the time when it was discovered that the lands mentioned in said petition were not legally taxable, and that they ought not to be conveyed, as well as at all times subsequent thereto and up to and at the time when said plaintiff's assignors offered to return said certificates to the county treasurer of said county, and demanded that he refund to them the amount paid by them into the county treasury as alleged in the original petition filed *166 herein, as well as at the time of the commencement of this action, there were no funds in the hands of said treasurer out of which such moneys could by him be refunded; and for the want of such funds, as well as for other reasons hereinafter alleged, he was unable to comply with any such demand.
“Said plaintiff further alleges, that at the time said John Geis & Co. offered to return said tax-sale certificates and demanded the refunding of said money, and for the space of two years prior thereto, and when this action was commenced, the county clerk, and the county treasurer, and the board of county commissioners of said county well knew, and had full knowledge of the fact that by reason of said lands having been sold for taxes when they were not taxable, they ought not to be conveyed, and that said John Geis & Co. were lawfully entitled to have refunded to them the money by them paid on such tax-sale certificates, with interest; and the said county treasurer well knew that said county clerk had refused, and would continue to refuse, to convey the same or any part thereof, for the reasons aforesaid.
“Said plaintiff further says, that for the purpose of avoiding the repayment of said moneys, and of preventing the said county treasurer from refunding the same, the said board of county commissioners, and the individual members thereof, prior to and at the time of the commencement of this action, did, by orders and directions to said treasurer, order and direct him not to refund said moneys nor any part thereof; and by such orders and directions did control the action and conduct of said treasurer with reference thereto, and did prevent him from making any endeavor to refund the said moneys.
“ Plaintiff further alleges, that with the knowledge as alleged herein, said board of commissioners, well knowing that there were no funds in the hands of the county treasurer out of which to refund said moneys, willfully neglected and refused to provide funds for that purpose, with the intent and design to prevent a recovery of the moneys so as aforesaid paid.”
A demurrer to the petition as amended was again interposed, and overruled. Answer and reply were then filed and trial had, and judgment rendered in favor of defendant in error for $6,695.10. The case is now before us again for consideration, and it is urged that the petition is still fatally defective —
1. Because it is not averred therein that the tax-sale cer *167 tificates were ever presented to the county clerk for him to indorse his refusal to convey the lands therein described, in accordance with the requirements of § 145, ch. 34, Laws of 1876.
2. Because the amended petition does not aver that the defendants in error offered to return the certificates to the county treasurer, with the refusal of the county clerk to convey the lands indorsed thereon.
3. Because the amended petition shows the defendants in error were not purchasers at a tax sale, but assignees only of the tax-sale certificates.
1'taxe“I-dáiffer-iog statutes. None of these objections is well taken. While we differ from counsel representing the defendant in error, who claims that the rights of his client are to be determined under the act of 1868, as in our view §145 of the • ' Laws of 1876, which provides for the return of money from the county to tax purchasers, does not affect any right which accrued under the prior statute, but simply give's a new direction for the return of such money, and as this section is substantially a reenactment of a prior section which had been in force since 1868, yet we think that the allegations in the petition avoid the necessity of any presentation of the certificates to the county clerk, or a return of the certificates to the county treasurer with the refusal of the county clerk to convey the land indorsed thereon. In Comm’rs of Lyon Co. v. Goddard, 22 Kas. 397, we said:
“Before the county treasurer can refund under the law of 1876, the tax certificate must be indorsed with the refusal of the county clerk to convey.”
*169 2*taxes^actfon against county. 3. Tax certificate; ivhenu“ent’ necessary. *167 This was upon the theory that the treasurer was provided with funds to comply with the statute, so that when the certificates, duly indorsed, were presented for payment, he could refund. But in this case, there are the allegations that there were no funds in the hands of the treasurer, out of which any return of money could be made to the holders of such certificates at the time the certificates were offered to be returned to the county treasurer; and for the want of such funds, the *168 treasurer was unable to comply with any demand for the return thereof. This is followed by the allegations that at the time of the offer to return the tax certificates and the demand for the refunding of the money thereon, and for the space of two years prior thereto, and when this action was commenced, the county treasurer and the board of county commissioners of the county well knew, and had full knowledge of the fact, that by reason of said lands having been sold for taxes when they were not taxable, they ought not to be conveyed, and the holders of tax certificates were entitled to have refunded to them the money paid by them on the certificates, with interest.; and that the county treasurer well knew that the county clerk had refused, and would continue to refuse, to convey the same, or any part thereof, for said reasons. And. the further allegations are therein contained, that for the purposes of avoiding the repayment of the moneys, and preventing the county treasurer from refunding the same, the board of county commissioners and the individual members thereof' prior to, and at the time of the commencement of this action, did, by orders and directions to said treasurer, order and direct him not to refund said moneys, or any part thereof,, and by such orders and directions did control the action and. conduct of the treasurer with reference thereto, and did prevent him from making any endeavor to refund the moneys; and that the commissioners, well knowing that there were no funds in the hands of the county treasurer out of which to refund such moneys, willfully neglected and refused to provide funds for that purpose, with the intent and design to' prevent the recovery of the moneys so paid thereon.. Under these allegations, the county treasurer was' relieved from refunding the amount paid on such tax sales, and it would have been useless therefore to have made a demand upon him, or have presented to the county clerk for him to indorse on the certificates his refusal to convey such lands. The’ orders and the interference of the commissioners are so set forth as to avoid the bringing of an action against the county treasurer, or making the county treasurer a party; and on *169 account of the- want of funds in his hands, and the interference of the county commissioners in the matter, the action is brought properly against the county. While we reiterate what we stated before, that “primarily it is the duty of the treasurer to return the moneys to the holders of the tax certificates, where the errors or irregularities are discovered before the conveyance of the land,” (Comm’rs v. Qeis, 22 Kas. 38,) when the holder of such tax certificates follows the direction of the statute, yet if-.the treasurer has no funds in his hands for that purpose, and such action and conduct on the part of the commissioners is set forth as to show that the holder of the certificates is denied his right for the return of such moneys by their . u3 ' ' j j ¡Dterference, and not by the conduct of the county clerk or county treasurer, the action may be brought directly against the county. Whenever the county has sold land for taxes when it ought not to have sold it, the purchase-money is to be refunded upon the terms and directions of the statute, and when the treasurer has not the means to disburse the money, and the county commissioners interfere and prevent by such interference the refunding of the money, the action is properly against the county as the principal, and the steps necessary to be taken for the return of the money from the county treasurer need not be gone through with. The law does not require the performance of a useless • 1 r ceremony, and the indorsement of the county c]erk would serve no useful purpose where the county treasurer has no funds out of which he can return taxes upon certificates, and therefore cannot refund. The payment of the county treasurer is not a personal matter, but a duty imposed by the statute upon him as an officer of the county, and the object of the section is, that whenever the county has sold for taxes land it ought not to have sold, and the land cannot be conveyed, the purchase-money shall be refunded. The legislature intended by the adoption of this section to offer additional inducements to persons to advance taxes upon security for tax certificates, promising if for any *170 error or'irregularity the land ought not to be'conveyed, the money so paid should be refunded,-together with all the subsequent taxes, charges and interest. (School District No. 15 v. Comm’rs of Allen Co., 22 Kas. 568.) This conclusion is in accord with the following language of the decision in Comm’rs of Saline Co. v. Geis, supra: “In order, therefore, that a petition shall state facts sufficient to constitute a cause of action against a board of commissioners of a county for the recovery of such moneys and interest, in behalf of the owners of tax certificates, under this section, it must allege either a want of funds in the hands of the treasurer, or some valid reason for his inability to respond to the demand on- him, or some action on the part of the commissioners by the way of order or other interference, whereby the holder of the tax certificate is delayed of or denied his right to have his money returned.”
The amended petition shows that the defendant in error represents the assignees of the tax certificates. In this case, the sales are alleged to have been invalid, and the statute permits the taxes and charges to be refunded to the purchaser or his assigns. (Gen. Stat. 1058, §120; Laws of 1876, §145.)
In the case of Sapp v. Comm’rs of Brown County, 20 Kas. 243, to which we are referred, the sale was valid, and the subsequent assignment of the title and the tax sale were void; therefore it has no application here, whether the defendant in error relies upon the statute of 1868 or 1876.
Again, it is urged that the court below committed error in refusing to admit in evidence the county orders alleged to have been turned over to the county at the time the several tax certificates were assigned. In no event was such evidence competent, as the law at the time of the assignment of the tax certificates permitted the payment to be made with orders, and it is immaterial whether such orders were worth less or more than par. (Gen. Stat. 1838, ch. 107, §91.) The counsel by their stipulation, however, waived any question of this character, because it was admitted upon the trial that John Geis & Co. had paid the several amounts due on the said pieces and parcels of land as claimed in their petition, and that *171 the petition correctly stated the sums paid, and dates of payment.
The final objection made, which is forcibly urged by the counsel of plaintiff in error, is, that the court erred in directing a verdict. The testimony counsel allege to have been conflicting is upon the point whether the tax certificates were presented to the county treasurer for payment, or whether there was any offer made to return such certificates. Upon this part of the case, R. A. Lovitt, of the firm of Garver & Lovitt, testified positively and clearly that he presented the tax-sale certificates at the office of the county treasurer, and demanded the money thereon before filing the petition in this ease. Against this evidence was the testimony of M. C. Springer, who was the acting deputy county treasurer for Lincoln county, and in charge of the treasurer’s office at the time of the alleged presentation and demand. He testified that he had no recollection of ever having seen the tax-sale certificates sued upon in the action previous to the beginning of the suit, or that R. A. Lovitt or any other person acting for Geis & Co. ever offered to return the certificates on his paying or refunding the amount thereof. The witness however further stated* that until after this action was brought he did not pay any particular attention to the matter of these certificates, and would not say that Mr. Lovitt did not speak to him on May 5, 1877, about refunding the money on the certificates ; that, he might have been engaged at the time at something so that it did not make much impression on his mind, and that he did not now recollect of his being there; that if he had demanded the money then, he would not have paid it; that there were no funds in the treasury to pay them with; that at the time there were county- orders outstanding, to be paid out of the money on hand; that the money on hand was levied and paid in for current expenses; that the money paid on these certificates had all been paid out long before May 5, 1877, on the orders of the board of county commissioners. The denial of the presentation and demand was so indefinite, and being accompanied with the further *172 statement that there were no funds to pay upon the certificates, and that if there had been any demand for payment they would not have been paid, that we do not think in this case there was any material error in the direction of the district court. We more readily, however, reach this conclusion, because it is somewhat doubtful whether it appears from the record that all of the evidence given upon the trial is incorporated therein. There is no statement in the “case-made” that it contains all the evidence, and although not exactly parallel, it presents the testimony very much like the case of Greenwood v. Bean, 20 Kas. 240.
The judgment of the district court will be affirmed.
All the Justices concurring.