(208 P.3d 774)
No. 99,232

STATE OF KANSAS, *Appellee,* v. SAUL ARTHUR MILLER, *Appellant.*

14

Opinion filed June 5, 2009.

*Shawn E. Minihan,* of Kansas Appellate Defender Office, for appellant.

*Ellen H. Mitchell,* county attorney, and *Steve Six,* attorney general, for appellee.

Before MARQUARDT, P.J., MALONE and CAPLINGER, JJ.

MARQUARDT, J.: Saul Arthur Miller appeals his convictions of rape, aggravated criminal sodomy, and two counts of aggravated indecent liberties with a child. We affirm in part and dismiss in part.

On July 19, 2005, 30-year-old Miller stopped at J.H.'s home to use her computer. Miller was a close family friend who visited J.H.'s home almost daily to watch TV, use the computer, or play the "tickle game" with J.H.'s two children, J.A. and 4-year-old N.A. That night, Miller spent the night and slept on a loveseat in J.H.'s living room while N.A. slept on the larger sofa.

The next evening, J.H. asked N.A. if she wanted Miller to come back and watch movies again. N.A. stated that she did not want him to come over again because "he hurt her." N.A. told J.H. that Miller had held her down, covered her mouth, and "touched her with his thingy and his fingers," and N.A. pointed to her vaginal area. When asked why she did not tell her mother sooner, N.A. said that Miller told her not to tell.

After N.A. complained of vaginal pain, J.H. and V.M., N.A.'s grandmother, examined her and observed that N.A.'s vagina was red and irritated.

J.H. contacted the police and took N.A. to the hospital emergency room where a sexual assault nurse examiner (SANE), Susan Reinert, examined N.A. Reinert observed several tears and abrasions around N.A.'s vagina and anus but found no bruising, hand prints, or discoloration on N.A.'s arms to suggest that she had been restrained.

Because of N.A.'s allegations, Miller was apprehended on July 23, 2005. Officer Shane Ashton interviewed Miller. According to Officer Ashton, Miller agreed to tell him "what really happened between him and [N.A.]" in exchange for allowing him to smoke his last cigarette. Miller admitted touching N.A.'s vagina, both on top and underneath of her underwear, and inserting his finger into her vagina but denied anal penetration. Miller's written statement said: "I touched her vagina with my finger throw [sic] her underwear[.] I might have touched her skin. I did put [it] on bear [sic] skin. I put finger in her not my penis."

The State charged Miller with rape, aggravated criminal sodomy, and two counts of aggravated indecent liberties with a child.

Before trial, Miller moved to suppress the statements he made to Officer Ashton, claiming that Officer Ashton threatened him and offered him leniency in exchange for his confession. At the suppression hearing, the district court found that Miller freely, voluntarily, and knowingly confessed. Miller's motion to suppress was denied.

The State filed a pretrial motion to determine whether N.A. was qualified to testify. If N.A. was disqualified, the State sought a ruling on the admissibility of N.A.'s statements to her family members and Reinert under K.S.A. 60-460(dd). Miller claimed that all of N.A.'s statements were testimonial, they were subject to his right of confrontation, and they should not be admitted.

The district court ruled that N.A.'s statements to J.H. and V.M. were not testimonial and were reliable, but N.A.'s statements to Reinert regarding the identity of the alleged perpetrator were testimonial and not admissible. The district judge stated, "I don't see any difference between an interrogation by a [SANE] and an interrogation by a law enforcement officer." The district court clarified that N.A.'s statements to Reinert regarding "who," "when,"

and "where" were not relevant, but statements regarding "what" were relevant to determine the nature of the injuries and potential treatment.

### I. Miller's First Trial

The State called N.A. as its first witness. N.A. refused to take the children's witness oath and shook her head in the negative when asked if she knew what it meant to tell the truth. The district court then ruled, after a motion from the State, that pursuant to K.S.A. 60-460(dd), N.A. "is not only unavailable as a witness but is disqualified as a witness based upon her refusal or inability, apparently, to even take the oath of the witness." The district court also found N.A. was an alleged victim of a crime and that she was not induced to make any false statements. Miller contemporaneously objected.

During Reinert's testimony, the State asked her what N.A. told her about the incident. As Reinert was answering, Miller objected and moved for a mistrial based on an intentional violation of the pretrial order. The district court denied Miller's request for a mistrial and admonished the jury not to consider the testimony.

During the State's closing argument, the State referred to Reinert's testimony. Miller objected to the argument and moved again for a mistrial. This time, the district court granted the mistrial.

### II. Miller's Second Trial

Before trying Miller again, the district judge held a pretrial conference and stated: "I don't think we need to bring the child in at this point like we did the last time and have her do nothing." Miller's counsel responded: "I don't see it's going to serve any purpose to have [N.A.] come in, sworn in, and not state anything."

J.H. testified that N.A. told her Miller had "touched her [vagina] with his thingy and his fingers" and that J.H. never heard N.A. cry or call out for help. V.M. testified that N.A. told her Miller "touched her, her private with his finger and penis" and "[t]hat he hurt her."

Reinert testified that when she asked N.A. to describe what happened to her, N.A. stated that "a person had held her arms and at

times put his hand on her mouth and . . . had moved her underwear aside and put his thingy on her privates, that he had put his finger in her butt . . . ." Miller did not object.

On cross-examination, Miller attempted to discredit N.A.'s accusations by questioning Reinert about the absence of bruising or discoloration on N.A.

On redirect, Miller objected when the State asked Reinert whether N.A. indicated that the assailant covered her mouth. The pretrial order limited Reinert's testimony to what happened to N.A. Miller acknowledged that he failed to object during Reinert's direct testimony, but he argued that "I didn't object the first time because I thought well maybe I'm wrong."

The State argued that it only elicited the testimony in response to Miller's attempt to discredit N.A.'s testimony; specifically, that N.A. claimed Miller had placed his hand over her mouth. The district court held that "it's valid cross-examination at this point." Miller cautioned the court that, due to the cumulative nature of the statements, he would "object to it the next time."

Miller testified and maintained that he did not touch N.A. with his penis or finger, but he may have inadvertently touched her on top of her underwear when he and N.A. were playing the "tickling game." Miller also testified that Officer Ashton threatened him in order to get his confession. Miller claimed that holding N.A.'s arms down while covering her mouth "would be impossible."

The jury convicted Miller on all counts. The district court sentenced Miller to 203 months in prison, the aggravated number in the Kansas Sentencing Guidelines box, with 36 months of post-release supervision.

### III. Double Jeopardy

On appeal, Miller claims that because of the prosecutor's "repeated, intentional, acts of misconduct," his case should be dismissed with prejudice and that putting him on trial a second time constitutes double jeopardy.

The issue of whether double jeopardy bars a defendant's second trial on the same charges is a question of law over which this court

exercises unlimited review. *State v. Dumars*, 37 Kan. App. 2d 600, 607, 154 P.3d 1120, *rev. denied* 284 Kan. 948 (2007).

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment to the Constitution, prohibits a person from being placed in jeopardy twice for the same offense. 37 Kan. App. 2d at 607. Granting a new trial places the party accused in the same position as if no trial had been had. *State v. Osburn*, 216 Kan. 638, 641-42, 533 P.2d 1229 (1975).

The fundamental rule is that double jeopardy will not prohibit a retrial after a criminal defendant moves for a mistrial, unless the prosecutor's misconduct is egregious. *State v. Morton*, 283 Kan. 464, 468, 153 P.3d 532 (2007). Following *Oregon v. Kennedy*, 456 U.S. 667, 72 L. Ed. 2d 416, 102 S. Ct. 2083 (1982), the *Morton* court stated: "It requires that the prosecutor intended to provoke a mistrial, to goad a defendant into sacrificing his or her choice to live with the outcome from the first jury." 283 Kan. at 471.

Although this prosecutor violated the pretrial order and caused the district court to declare a mistrial, Miller fails to claim or cite to conduct that is reversible misconduct. Miller has failed to show that the State intended to provoke him into moving for a mistrial. As in *Morton*, there is no evidence in the instant case that the State's conduct was deliberate, was a product of ill will, or was calculated into forcing Miller to move for a mistrial. The evidence in the record on appeal shows that Reinert's testimony was similar to that of J.H. and V.M. Additionally, the State admitted considerable evidence of Miller's guilt, including his signed confession and testimony from Officer Ashton.

Moreover, the district court found that the State's errors were "inadvertent and inattentive." There is no evidence in the record on appeal to suggest otherwise. The district court did not violate Miller's Fifth Amendment right against double jeopardy by ordering a new trial.

*IV. Prosecutor's Appeal to the Jury's Sense of Compassion for the Victim*

Miller claims that the State elicited certain testimony from Reinert to appeal to the jury's sense of compassion for N.A., which violated the pretrial order.

Miller refers to several incidents that occurred during his first trial. He ignores the fact that granting a mistrial puts Miller in the same position as if there had been no previous trial. See *Osburn,* 216 Kan. at 641-42. Miller repeatedly cites to the incorrect volume and page in the record on appeal for this argument. Kansas Supreme Court Rule 6.02(d) (2008 Kan. Ct. R. Annot. 38) requires that facts in a brief are required to be keyed to the record on appeal by volume and page number. Where an appellant's contentions were made without being keyed to the record on appeal, we will presume those contentions are not supported by the record on appeal. See *In re Dennis,* 286 Kan. 708, 723, 188 P.3d 1 (2008).

Notwithstanding the erroneous citations, we will address Miller's claim of prosecutorial misconduct during the second trial. Miller claims that the prosecutor elicited testimony from Reinert that N.A. told her

"a person had held her arms and at times put his hand on her mouth and that he had moved, she had on a shirt and underwear and that the person had moved her underwear aside and put his thingy on her privates, that he had put his finger in her butt and took it out and licked it."

Miller also objects to the prosecutor's statement during closing argument, "Think how frightened four-year-old [N.A.] was that night, when an adult family friend begins to touch her." Miller did not object to either this statement or the State's questioning of Reinert during the second trial. Miller claims that under *State v. Pabst,* 268 Kan. 501, 996 P.2d 321 (2000), no objection is required where the prosecutor commits misconduct. That assertion is only true when the claimed error in closing argument rises to the level of a denial of the defendant's Fourteenth Amendment right to due process. 268 Kan. 501, Syl. ¶ 2.

Claims concerning questions posed by a prosecutor and responses to those questions during trial must be preserved with a

contemporaneous objection before those claims may be reviewed on appeal. *State v. King*, 288 Kan. 333, Syl. ¶ 5, 204 P.3d 585 (2009). Therefore, Miller's appeal on the questioning of Reinert is without merit.

Claims of prosecutorial misconduct during closing argument do not require a contemporaneous objection in order to preserve the issue for appeal; however, the appellate court must determine: (a) Whether the prosecutor's conduct was outside the wide latitude allowed prosecutors when arguing cases and, (b) if so, whether the conduct deprived the defendant of a fair trial. *King*, 288 Kan. 333, Syl. ¶ 8.

A prosecutor is afforded wide latitude during closing argument to the jury. *Pabst*, 268 Kan. at 507. After review of the record on appeal, it is clear that the prosecutor's comments were not outside the wide latitude allowed in discussing the evidence. The prosecutor's arguments were in response to Miller's closing argument that J.H.'s house was "not a house in which this young lady was supposedly secreted out into a place where no one can see, hear, understand, view, what was going on." Miller also stated during closing argument that not one police officer took the time "to go into that house, to measure, to look [and] . . . ask the hard question, 'Well, ma'am, you're fifteen, eighteen feet away, you didn't hear her squirm? She's being sexually violated and you're eighteen feet away? And you didn't hear something?' "

The prosecutor was responding to Miller's closing argument; therefore, the State's argument did not exceed the wide latitude it is afforded.

## V. *Disqualification of the Child Victim as a Witness*

Miller argues that "[t]he investigation into N.A.'s disqualification was simply not a thorough enough investigation in determining whether N.A. was disqualified."

A trial court's determination of whether a statement is admissible under the Kansas hearsay statute, K.S.A. 60-460, is reviewed by an appellate court for an abuse of discretion, which includes a determination that the trial court's discretion was exercised in light of a correct understanding of the applicable law. *State v. Davis*, 283

Kan. 569, 575, 158 P.3d 317 (2007). However, the interpretation of a statute is a question of law over which an appellate court has unlimited review. *State v. Storey*, 286 Kan. 7, 9-10, 179 P.3d 1137 (2008).

Generally, evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible. K.S.A. 60-460.

However, K.S.A. 60-460(dd) states that a child's hearsay statement in a criminal proceeding is admissible to prove a crime if:

"(1) The child is alleged to be a victim of the crime or offense or a child in need of care; and

"(2) the trial judge finds, after a hearing on the matter, that the child is disqualified or unavailable as a witness, the statement is apparently reliable and the child was not induced to make the statement falsely by use of threats or promises.

"If a statement is admitted pursuant to this subsection in a trial to a jury, the trial judge shall instruct the jury that it is for the jury to determine the weight and credit to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, any possible threats or promises that might have been made to the child to obtain the statement and any other relevant factor."

It is important to note that Miller is not arguing that specific statements N.A. made to her mother and grandmother were hearsay and, therefore, were inadmissible. Miller is claiming that the district court failed to make the required findings to disqualify N.A. as a witness.

During a preliminary hearing, the district court elected to delay its determination of whether N.A. was disqualified and unavailable as a witness until trial.

At the first trial, the State called N.A. as a witness. N.A. failed to take the children's witness oath. When the State asked N.A. if she knew what it meant to tell the truth, N.A. shook her head negatively. Likewise, N.A. could not, or would not, answer several other of the State's questions.

Based on these findings, the district court held that N.A. was not available to testify because she was "unable to respond to even the most elementary questions, or to express any understanding of

the necessity of testifying truthfully in this proceeding." The district court determined that N.A.'s statements to her mother and grandmother, and certain medically necessary statements to Reinert, appeared reasonably reliable and that there was no indication any person induced N.A., either by threat or promise, to make any statements. The district court ruled that N.A. was the alleged victim of an offense and thus met the requirements of K.S.A. 60-460(dd).

At the second trial, the district court found that N.A. was still disqualified and unavailable as a witness. Additionally, it instructed the jury that it should determine the weight and credibility of N.A.'s statements given her age and maturity, the nature of the statements, the circumstances surrounding her statements, whether any threats or promises had been made to obtain her statements, and any other relevant factors.

Miller fails to cite any part of the statute that the district court neglected to consider. Simply claiming that the district court was not "thorough enough" does not make it so.

In the alternative, Miller argues that the district court should have required N.A. to testify via closed-circuit television pursuant to K.S.A. 22-3434. K.S.A. 22-3434(a)-(b) allows a child victim to testify via closed-circuit television if the district court finds that testifying in the courtroom would traumatize the child to the extent that the child would be prevented from reasonably communicating with the jury.

K.S.A. 22-3434 imposes no duty on the district court to require a child victim to testify in a criminal proceeding. Miller cites no Kansas case or statute that requires the district court to order a child victim to testify via closed-circuit television. The district court did not err by failing to require N.A. to testify via closed-circuit television.

## VI. Confrontation Clause

Miller argues that his rights under the Sixth and Fourteenth Amendments to the United States Constitution were violated when N.A.'s statements were admitted at trial without giving him an opportunity to cross-examine her.

The Sixth Amendment Confrontation Clause, applicable to the states through the Fourteenth Amendment, requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend VI; *Pointer v. Texas*, 380 U.S. 400, 403-04, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (1965).

Issues related to the Sixth Amendment Confrontation Clause raise questions of law over which an appellate court exercises unlimited review. *State v. Brown*, 285 Kan. 261, 282, 173 P.3d 612 (2007).

In *Crawford v. Washington*, 541 U.S. 36, 59, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), testimonial hearsay statements that would otherwise be inadmissible are admissible if "the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." Nontestimonial hearsay statements do not implicate the Confrontation Clause and admissibility turns on whether the statements meet a statutory exception to Kansas' hearsay statute, K.S.A. 60-460. *Davis*, 283 Kan. at 575.

The essential question is whether N.A.'s statements to Reinert during her medical examination were testimonial. If the statements were testimonial, the statements may only be admissible if N.A. was unavailable and Miller had a prior opportunity to cross-examine her. If the statements were nontestimonial, the Confrontation Clause guarantees are not implicated. *Davis*, 283 Kan. at 575.

Miller argues that N.A.'s statements to Reinert were testimonial because: (1) Her job was to collect evidence and statements that would later be used for prosecution; (2) Reinert, although not a government official, was working "at the behest of the police and therefore was an agent of the police"; and (3) N.A.'s statements described a past event and were not made during an ongoing emergency.

The State maintains that N.A.'s statements did not implicate the Confrontation Clause and were made to Reinert as a medical professional, not as a law enforcement officer, and obtaining a patient's medical history was but one aspect of her duties.

Recently in *State v. Jones*, 287 Kan. 559, Syl. ¶ 3, 197 P.3d 815 (2008), the Kansas Supreme Court listed factors previously set

forth in *Brown* used in determining whether statements are testimonial:

" 'Factors to be considered in determining whether a hearsay statement is testimonial include: (1) Would an objective witness reasonably believe such a statement would later be available for use in the prosecution of a crime? (2) Was the statement made to a law enforcement officer or to another government official? (3) Was proof of facts potentially relevant to a later prosecution of a crime the primary purpose of the interview when viewed from an objective totality of the circumstances, including circumstances of whether (a) the declarant was speaking about events as they were actually happening, instead of describing past events; (b) the statement was made while the declarant was in immediate danger, *i.e.*, during an ongoing emergency; (c) the statement was made in order to resolve an emergency or simply to learn what had happened in the past; and (d) the interview was part of a governmental investigation? and (4) Was the level of formality of the statement sufficient to make it inherently testimonial; *e.g.*, was the statement made in response to questions, was the statement recorded, was the declarant removed from third parties, or was the interview conducted in a formal setting such as in a governmental building?' " 287 Kan. at 565 (quoting *Brown*, 285 Kan. 261, Syl. ¶ 15).

Other jurisdictions are divided on this issue. In *State v. Stahl*, 111 Ohio St. 3d 186, 199, 855 N.E.2d 834 (2006), the Ohio Supreme Court held, after a through review of Confrontation Clause case law in other jurisdictions, that "to a reasonable person, questioning by a nurse or other medical professional during an emergency-room examination would appear to serve a primarily health-care-related function."

In *State v. Vaught*, 268 Neb. 316, 682 N.W.2d 284 (2004), the Nebraska Supreme Court affirmed the district court's ruling that the victim's statement that the defendant "put his finger in her pee-pee" was not testimonial. It held that the child's statement to a doctor regarding the "cause" of her symptoms was made for the purpose of medical diagnosis or treatment. 268 Neb. at 318, 326-28.

Recently, the Kentucky Supreme Court ruled that a rape victim's statements to a SANE nurse were testimonial because the nurse acted in cooperation with police and gathered evidence for the purpose of using that evidence at a later prosecution. *Hartsfield v. Com.*, 277 S.W.3d 239, 244-45 (Ky. 2009). The *Hartsfield* court, examining *Davis v. Washington*, 547 U.S. 813, 165 L. Ed. 2d 224,

126 S. Ct. 2266 (2006), determined that a SANE interview was more analogous to a police interview than a medical examination because the questioning was not for the purpose of resolving a problem or an emergency, but rather to gather evidence of past events to be used in a future criminal prosecution. *Hartsfield*, 277 S.W.3d at 244-45.

The New Mexico Court of Appeals, in *State v. Ortega*, 143 N.M. 261, 265-69, 175 P.3d 929 (Ct. App.), *cert. denied* 143 N.M. 213 (2007), similarly held that a child rape victim's statements to a SANE nurse were testimonial. There was no indication that the SANE examination was primarily for medical treatment or diagnosis, but rather only to develop and preserve evidence. The *Ortega* court noted that "the primary purpose in her SANE interview was to prove some past fact for use in a criminal trial rather than to meet an ongoing emergency." 143 N.M. at 269.

With no clear direction from other jurisdictions or the United State Supreme Court, we consider this issue in light of the factors articulated in *Brown*, where the court considered an extrajudicial statement made by a witness and offered for the truth of the matter asserted.

*A. Would an objective witness reasonably believe such a statement would later be available for use in the prosecution of a crime?*

The *Brown* court, while discussing *State v. Miller*, 284 Kan. 682, 709-13, 163 P.3d 267 (2007), considered whether an objective witness, under the circumstances, would reasonably believe that the witness' statements would later be available for use in the prosecution of a crime. Generally, statements made in the presence of police officers and subject to the formalities and procedures regularly associated with testimonial hearsay suggest the possibility that the witness' statements would later be available for use in the prosecution of a crime. 285 Kan. at 290.

Here, N.A. made statements to Reinert during a physical examination. There is no indication that any formalities and procedures regularly associated with testimonial hearsay were present— *e.g.*, "prior testimony at a preliminary hearing, before a grand jury,

or at a former trial, and to police interrogations." *Crawford*, 541 U.S. at 68. In addition, there is no evidence that N.A. made these statements in the presence of a police officer.

The record on appeal includes the statements of J.H., V.M., and N.A. that were provided to the responding police officer. After N.A. gave her statement to the police officer, J.H. drove N.A. to the emergency room. Reinert was the first medical professional to examine N.A.

In sharp contrast to the cases cited in *State v. Henderson*, 284 Kan. 267, 160 P.3d 776 (2007), there is no indication that N.A. was interviewed by a forensic interviewer or that Reinert's questions concerning the cause of N.A.'s injuries were the "functional equivalent of police interrogation." See 284 Kan. at 292-93 (citing *Hernandez v. State*, 946 So. 2d 1270, 1280-84 [Fla. Dist. App. 2007]).

Even though a 4-year-old would have no idea that the physical evidence collected by a nurse could later be used for a prosecution or that her statements made during a medical examination could be used for the prosecution of a crime, the Kansas Supreme Court has held: "A young victim's awareness, or lack thereof, that her statement would be used to prosecute, is not dispositive of whether her statement is testimonial." *Henderson*, 284 Kan. at 281. The standard by which courts must judge is whether an objective witness reasonably believes that the statements made to Reinert would be available for use at a later trial. 284 Kan. at 280. From an objective witness' perspective, the witness could expect that the physical evidence collected by a nurse and the witness' statements made to the nurse could be used for the prosecution of a crime.

*B. Was the statement made to a law enforcement officer or to another government official?*

The record on appeal indicates that Reinert was a registered nurse and a SANE nurse. Although admittedly part of a sexual assault response team, there is no evidence that Reinert is a law enforcement officer or a government official.

*C. Were facts potentially relevant to a later prosecution of a crime the primary purpose of the interview when viewed from an objective totality of the circumstances?*

It is clear from the record on appeal that N.A.'s statements to Reinert were describing past events, not events as they were happening; were not made while N.A. was in imminent danger or during an ongoing emergency; and were not made to resolve an emergency, but simply described what happened to her the day before.

Reinert testified that she gathered information about the incident from N.A. "to know where on the body I need to collect evidence which is part of our job as the Sexual Assault Nurse Examiner, we do swabs, things like that, take pictures, I like to know on the body where I need to be looking for those things."

After N.A. described the cause of her vaginal and anal tears, Reinert testified that she "took a few swabs, one from the forearm, one from the arm, the coccyx area, the labia majora . . . . Took a look at her genital area. We also did the K.B.I. kit which does fingernail scrapings and things like that." At no time did Reinert testify that the primary purpose of her examination was for medical diagnosis or treatment. Reinert's statements—that she asked N.A. what happened because she needed to know where to swab and collect evidence—are significant.

Based on the totality of the circumstances, the primary purpose of the SANE medical examination was to collect and preserve evidence for later use in the prosecution of a crime, not for medical diagnosis or treatment.

*D. Was the level of formality of the statements sufficient to make them inherently testimonial?*

There is no indication there was a level of formality to suggest that N.A.'s statements were inherently testimonial such as "prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and to police interrogations." See *Crawford*, 541 U.S. at 68. Reinert merely asked a question concerning the cause of N.A.'s injuries. However, it is clear that N.A.'s statements were

made in response to Reinert's questions and that the statements were recorded.

Thus, Reinert's examination was for the sole purpose to collect evidence that would be used against Miller at trial, even though Reinert was not a law enforcement officer and her questioning had no apparent formalities usually accompanying a testimonial statement.

Nonetheless, an objective witness would know that statements made to a SANE could be used during a later prosecution. Reinert's purposeful medical examination combined with an objective witness' expectations lead to the conclusion that N.A.'s statements to Reinert were testimonial. Miller did not have a prior opportunity to cross-examine N.A. Therefore, N.A.'s statements to Reinert were inadmissible, and the district court violated Miller's Confrontation Clause rights when it admitted N.A.'s statements.

### E. Harmless Error

There are several factors we consider in determining whether a violation of a defendant's Confrontation Clause rights is harmless under *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, *reh. denied* 386 U.S. 987 (1967). See *State v. Anderson,* 287 Kan. 325, 197 P.3d 409 (2008).

" 'Violation of the Confrontation Clause is subject to analysis under the federal harmless error rule. The correct inquiry is whether . . . a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, and, of course, the overall strength of the prosecution's case.' " *Anderson,* 287 Kan. at 341 (quoting *State v. Nguyen,* 281 Kan. 702, Syl. ¶ 6, 133 P.3d 1259 [2006]).

Here, not only did J.H. and V.M. testify to similar statements that N.A. made to them, but Miller's signed confession was admitted in evidence.

Thus, the district court's violation of Miller's Confrontation Clause rights was harmless error and had little, if any, likelihood of changing the trial's outcome based on the overwhelming evi-

dence of Miller's guilt and the cumulative nature of the erroneously admitted testimony.

### VII. *Sentencing*

Miller argues that the district court erred when it sentenced him to an aggravated sentence without proving the aggravating facts to a jury beyond a reasonable doubt. Miller cites to *Apprendi v. New Jersey*, 530 U.S. 466, 477, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), to suggest that his Sixth and Fourteenth Amendment rights were violated.

Based on Miller's criminal history and his current crimes, his conviction fell within grid box G-1 of the Kansas Sentencing Guidelines Act (KSGA), see K.S.A. 21-4704, which carries a sentencing range of 184, 195, or 203 months. The district court sentenced Miller to 203 months' incarceration.

The Kansas Supreme Court has held that the KSGA provides the district court with discretion to impose any sentence within the presumptive range. *State v. Johnson*, 286 Kan. 824, 851, 190 P.3d 207 (2008).

This court is without jurisdiction to review "[a]ny sentence that is within the presumptive sentence for the crime." K.S.A. 21-4721(c)(1). Where the imposed sentence is within the presumptive guidelines sentence range, the appellate court lacks jurisdiction to consider the appeal. *Johnson*, 286 Kan. at 851-52; *State v. Flores*, 268 Kan. 657, 659, 999 P.2d 919 (2000). This issue is dismissed for lack of jurisdiction.

### VIII. *Criminal History Not Proved to Jury*

Miller argues that the district court erred when it used his prior criminal history to enhance his sentence without requiring that history be proved to the jury beyond a reasonable doubt. He again cites *Apprendi* as support. Miller acknowledges that the Kansas Supreme Court has specifically ruled against him on this issue in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002), and only wishes to preserve the issue for appeal.

In *Apprendi*, the United States Supreme Court held: *"Other than the fact of a prior conviction,* any fact that increases the pen-

alty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." (Emphasis added.) 530 U.S. at 490.

In *Ivory*, 273 Kan. 44, Syl., our Supreme Court held that *Apprendi* does not apply where the sentence imposed was based in part upon a criminal history score under the KSGA. Thus, the prosecution is not required to present prior convictions listed in a criminal history to a jury.

A recent Kansas Supreme Court case has affirmed *Ivory*. See *State v. Fewell*, 286 Kan. 370, Syl. ¶ 11, 184 P.3d 903 (2008). The Kansas Court of Appeals is duty bound to follow Kansas Supreme Court precedent, absent some indication the court is departing from its previous position. *State v. Singleton*, 33 Kan. App. 2d 478, 488, 104 P.3d 424 (2005). This issue has no merit.

## IX. Cumulative Errors

Miller argues that even if the individual errors do not warrant reversal, their cumulative effect denied him a fair trial.

" 'Cumulative trial errors, considered collectively, may be so great as to require reversal of a defendant's conviction. The test is whether the totality of the circumstances substantially prejudiced the defendant and denied the defendant a fair trial. No prejudicial error may be found under the cumulative effect rule if the evidence is overwhelming against a defendant.' " *State v. Nguyen*, 285 Kan. 418, 437, 172 P.3d 1165 (2007) (quoting *State v. Plaskett*, 271 Kan. 995, 1022, 27 P.3d 890 [2001]).

With the exception of the district court's violation of Miller's Confrontation Clause rights, which we find was harmless, the record on appeal does not support a claim of cumulative error. Based on the totality of the circumstances, it cannot be said that Miller has been denied a fair trial.

We affirm Miller's convictions and dismiss his sentencing issue.