**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 3, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ROBERT CLAUDE MCCORMICK,

     Petitioner - Appellant,

v.

No. 14-7095

DAVID PARKER, Warden,

     Respondent - Appellee.
_____

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:10-CV-00117-JHP-KEW)**
_____

Ryan A. Ray, Norman Wohlgemuth Chandler Jeter, Barnett & Ray, P.C., Tulsa, Oklahoma, for Petitioner-Appellant.

Keeley L. Miller, Assistant Attorney General, Office of the Attorney General for the State of Oklahoma, Oklahoma City, Oklahoma (E. Scott Pruitt, Attorney General of Oklahoma, Jay Schniederjan, Assistant Attorney General, Office of the Attorney General for the State of Oklahoma, Oklahoma City, Oklahoma, with her on the briefs), for Respondent-Appellee.
_____

Before **HOLMES**, **MATHESON**, and **MORITZ**, Circuit Judges.
_____

**MORITZ**, Circuit Judge.
_____

    Robert McCormick appeals the district court's denial of his petition for a writ

of habeas corpus under 28 U.S.C. § 2254. McCormick seeks relief from his

conviction for child sexual abuse, alleging the State of Oklahoma violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), when the prosecution suppressed evidence regarding the credentials of a witness who testified falsely that she was a certified sexual assault nurse examiner (SANE nurse) at the time of trial. We conclude that, under the circumstances of this case, the SANE nurse was a member of the prosecution team. As such, we impute her knowledge of her own lack of credentials to the prosecutor, who was obligated to disclose this impeachment evidence to the defense. Accordingly, we hold the prosecution suppressed favorable, material evidence in violation of McCormick's rights under *Brady*. We reverse the district court and grant McCormick's § 2254 petition.

## BACKGROUND

Robert McCormick started dating M.K.'s mother and moved in with her family just outside Bokchito, Oklahoma, when M.K. was 7. McCormick kept a motor home on the property, and M.K. began staying in the motor home with him when she was almost 8. When M.K. was 11, she went to live with her grandmother.

Five months after moving in with her grandmother, M.K. told a child services worker that McCormick raped her. M.K. repeated this to a child services investigator in January 2002. During an interview with a sheriff's investigator two days later, M.K. accused McCormick of touching her with his hands and penis. The next day, the child services investigator brought M.K. to Texoma Medical Center in Denison, Texas, to be examined. There, SANE nurse Carolyn Ridling conducted a sexual-assault examination on M.K.

2

The state ultimately charged McCormick with child sexual abuse and child abuse. The state named Ridling as a potential witness but didn't provide defense counsel with any information about her credentials.

McCormick went to trial in January 2007. During jury selection, one eventual juror said M.K.'s testimony, even if credible, "wouldn't be enough" for her to convict McCormick. R. vol. 2, 560. Similarly, the eventual jury foreperson said it "would help" him decide whether to convict if a SANE nurse testified that she examined M.K. and found genital trauma consistent with M.K.'s story. R. vol. 2, 561-62. And during opening statements, the prosecutor characterized Ridling as "probably the most important corroborating witness" the state would present. R. vol. 2, 613.

At trial, M.K., then 17, testified that McCormick put his hands in her pants when she was about 7 and a half years old. She said McCormick put his penis inside her vagina for the first time when she was 8 and sexually assaulted her "at least one time a day" after that. R. vol. 2, 739. And she said McCormick "didn't stop until [she] was 11," when she left to live with her grandmother. R. vol. 2, 701.

Ridling testified she was certified as a SANE nurse. In answering a question about her training, Ridling testified:

> I have continuing ed that you have to have, because I'm certified by the Attorney General's office in the State of Texas to do exams on adults and pediatrics. And in order to do that, you have to have 50-something hours every two years—which I have more than that, but you have to have continuing ed to keep it going.

3

R. vol. 2, 948-49. On cross-examination, counsel asked, "And are you current on your certification through Texas?" Ridling answered, "Yes." R. vol. 2, 971.

Based on her examination, Ridling testified she found evidence of two tears in M.K.'s hymen and opined, "The only way you can get these kind[s] of tears is from some kind of penetration." R. vol. 2, 965. On cross-examination, Ridling added, "I can prove that penetration occurred, I just can't tell you how." R. vol. 2, 990-91. She also authenticated three photographs of M.K.'s vaginal and anal areas.

Ridling, the two child services workers, and M.K.'s brother testified for the state as to statements M.K. made to them about the alleged sexual abuse. But only Ridling offered any independent direct evidence to corroborate M.K.'s allegations. The prosecutor emphasized Ridling's testimony during the state's closing argument, telling the jurors Ridling showed them "pictures that don't lie" and asserting that Ridling's exam was consistent with M.K.'s version of the events. R. vol. 2, 1057.

The jury found McCormick guilty of child sexual abuse and child abuse, and the trial court sentenced McCormick to two consecutive life sentences. In his direct appeal, McCormick asserted only a single issue—that his convictions violated the Double Jeopardy Clause. The Oklahoma Court of Criminal Appeals affirmed McCormick's convictions but modified his life sentences to run concurrently. McCormick then sought state post-conviction relief, alleging he received ineffective assistance of trial counsel. The state district court summarily rejected his arguments as waived based on McCormick's failure to raise those arguments in his direct appeal. The OCCA affirmed. In support, it cited Okla. Stat. Ann. tit. 22 § 1086,

which generally prohibits courts from granting post-conviction relief based on grounds the petitioner failed to raise on direct appeal.

In 2010, McCormick filed a federal habeas petition under 28 U.S.C. § 2254. In his opening brief, McCormick renewed his double jeopardy argument and further alleged Ridling committed perjury, although he did not characterize this claim as a *Brady* violation. In support, McCormick supplemented his brief with an affidavit from the Office of the Texas Attorney General showing that, contrary to Ridling's testimony, she wasn't certified as a SANE nurse in Texas when she testified at his trial. McCormick also submitted an agreed order from the Texas Board of Nursing finding that Ridling misrepresented herself as a certified SANE nurse "to patients, court officials and the public" from October 2006 to April 2007.[1] R. vol. 1, 284. The order reflects that Ridling admitted as much, stating, "In April 2007 I did erroneously respond to questions on cross-examination that I was certified by the Texas Attorney General's office." R. vol. 1, 284. In a later filing, McCormick reframed his allegation against Ridling as a *Brady* claim.

The federal district court granted habeas relief on double jeopardy grounds and vacated McCormick's conviction and life sentence for child abuse. But it found his remaining claims moot. We granted McCormick a certificate of appealability on his

---

[1] In addition, McCormick submitted a letter from a Texas defense attorney who said that Ridling similarly testified falsely in three Texas trials, two of which resulted in convictions, one in Grayson County and one in Fannin County. McCormick also submitted a Texas Court of Appeals opinion ordering a new trial in the Grayson County case based on Ridling's false testimony about her certification. And he submitted a letter from a county district attorney advising area defense attorneys that Ridling testified falsely in a Fannin County trial about being certified.

*Brady* claim. We then reversed the district court's mootness determination, pointing out McCormick "could be granted a new trial or other relief" from his remaining child sexual abuse conviction if he succeeded on his *Brady* claim. *McCormick v. Parker*, 571 F. App'x 683, 686 (10th Cir. 2014) (unpublished).

In the same order, we also ruled that the state expressly waived its defense that McCormick failed to exhaust his *Brady* claim in state court. *Id.* at 686-88. But we noted that "the state did raise in district court a procedural default defense based on a state procedural bar arising from the OCCA's determination" that McCormick waived all issues he could have raised on direct appeal but didn't raise. *Id.* at 688. Accordingly, we ruled the state could "reassert this procedural default defense" on remand. *Id.*

But the state concedes it failed to reassert this procedural default defense on remand. Instead, it defended against McCormick's *Brady* claim on the merits, arguing there was no indication the prosecution suppressed information related to Ridling's credentials. The district court agreed and rejected McCormick's *Brady* claim, concluding McCormick failed to establish that the prosecutor suppressed any evidence. Specifically, the district court found that the prosecutor had no obligation to provide information about Ridling because she was neither a state employee nor under the prosecutor's control. We subsequently granted McCormick's request for a

certificate of appealability on the issue of whether the prosecution withheld favorable evidence under *Brady*.[2]

## DISCUSSION

### I.    The state waived its affirmative defense of procedural default.

Before we consider McCormick's *Brady* claim, we first must determine if it is properly before us. McCormick didn't raise this claim before the OCCA, and ordinarily we can't grant relief on unexhausted claims. *See* 28 U.S.C. § 2254(b)(1)(A). But we previously ruled the state expressly waived its exhaustion defense. *See McCormick*, 571 F. App'x at 688. Accordingly, McCormick's failure to exhaust his *Brady* claim doesn't preclude us from reaching the merits of this claim. *See DeRosa v. Workman*, 679 F.3d 1196, 1208 (10th Cir. 2012).

Undeterred, the state now argues we shouldn't reach the merits of McCormick's *Brady* claim because of his alleged procedural default, a similar but distinct defense. Under the procedural default doctrine, we ordinarily won't review the merits of a claim the state court declined to consider based on a petitioner's failure to follow that state's procedural rules. *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012). As the state points out, Oklahoma has a procedural rule that deems waived all issues the petitioner could have raised on direct appeal but didn't raise. Okla. Stat. Ann. tit. 22 § 1086. And in affirming the state district court's denial of post-conviction relief, the OCCA invoked this rule generally to bar all claims

---

[2] We also granted review of a claim of ineffective assistance of trial counsel. Because we reverse on *Brady* grounds, we need not address this claim.

7

McCormick failed to raise on direct appeal. Thus, the state insists, McCormick's failure to raise his *Brady* claim on direct appeal necessarily bars our consideration of that claim.

But procedural default is an affirmative defense, and the state must either use it or lose it. *See Hooks v. Ward*, 184 F.3d 1206, 1216 (10th Cir. 1999) ("There is no doubt that 'state-court procedural default . . . is an affirmative defense,' and that the state is 'obligated to raise procedural default as a defense or lose the right to assert the defense thereafter.'" (quoting *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996))). We previously—and explicitly—invited the state to reassert its procedural default defense when we remanded to the district court with directions to address McCormick's *Brady* claim. *See McCormick*, 571 F. App'x at 688.

Yet the state conceded at oral argument that it failed to take advantage of our invitation. And the state's decision to abandon a defense we explicitly invited it to raise in favor of challenging the merits is a textbook example of waiver. *See Wood v. Milyard*, 132 S. Ct. 1826, 1835 (2012) (describing waiver as the "intentional relinquishment or abandonment of a known right" and noting that state's choice to deliberately steer court away from procedural defense towards merits fits this description (quoting *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004))). Accordingly, we decline to address the state's procedural default argument and instead proceed to the merits of McCormick's *Brady* claim. *See United States v. McGehee*, 672 F.3d 860, 873 (10th Cir. 2012) (concluding party isn't entitled to appellate relief when attempting to reassert argument it previously raised and abandoned below).

8

**II.    The prosecution suppressed material evidence favorable to McCormick.**

McCormick argues he is entitled to habeas relief because the prosecution's failure to disclose the truth about Ridling's credentials violated his due process rights under *Brady*. Specifically, McCormick challenges the district court's finding that the prosecutor didn't suppress any evidence related to Ridling's credentials because Ridling was neither a state employee nor under the prosecutor's authority.

Ordinarily, the standard of review under the Antiterrorism and Effective Death Penalty Act presents a "formidable barrier to federal habeas relief" when a state court rejects a claim on the merits. *White v. Wheeler*, 136 S. Ct. 456, 460 (2015) (quoting *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013)). But if the state court never evaluated the merits of a claim and that claim isn't otherwise procedurally barred, we will "exercise our independent judgment in deciding the claim." *Hain v. Gibson*, 287 F.3d 1224, 1229 (10th Cir. 2002). "In doing so, we review the federal district court's conclusions of law de novo and its findings of fact, if any, for clear error." *Id.* Accordingly, because the OCCA never addressed McCormick's *Brady* claim on the merits and because the state waived any argument that the claim is procedurally barred, we exercise de novo review of the district court's rejection of McCormick's *Brady* claim.

In *Brady*, the Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. To establish a *Brady* violation, McCormick must

9

prove by a preponderance that (1) the prosecution suppressed evidence, (2) the evidence was favorable to him, and (3) the evidence was material. *See United States v. Garcia*, 793 F.3d 1194, 1205 (10th Cir. 2015). The state doesn't dispute that evidence showing Ridling testified falsely about her Texas certification is favorable to McCormick. Instead, the state argues that McCormick fails to demonstrate that (1) the prosecution suppressed evidence or (2) the evidence was material.

**A.     The prosecution suppressed evidence.**

McCormick doesn't point to any evidence that indicates the prosecutor actually knew about Ridling's lapsed credentials. Nevertheless, he argues that Ridling was a member of the prosecution team and that, as such, we must impute Ridling's own knowledge of her lack of current certification to the prosecutor as "the party who is ultimately accountable for the nondisclosure of evidence." *Smith v. Sec'y of N.M. Dep't of Corr.*, 50 F.3d 801, 824 (10th Cir. 1995).

Under *Brady*, the prosecution has a duty to disclose material impeachment evidence that is favorable to the defense. *Id*. at 825. But that duty arises even if the prosecutor has no "actual knowledge of the existence of the evidence at issue" because—for *Brady* purposes—the "prosecution" includes "not only the individual prosecutor handling the case, but also . . . the prosecutor's entire office, as well as law enforcement personnel and other arms of the state involved in investigative aspects of a particular criminal venture." *Id*. at 824 (internal citation and footnote omitted). Accordingly, we impute knowledge of material impeachment evidence to the prosecutor for *Brady* purposes when that knowledge is in the possession of other

10

"agents of the prosecution." *See id.* at 824-25 (quoting *Fero v. Kerby*, 39 F.3d 1462, 1472 n.12 (10th Cir. 1994)); *see also Avila v. Quarterman*, 560 F.3d 299, 307 (5th Cir. 2009) ("It is well settled that if a member of the prosecution team has knowledge of *Brady* material, such knowledge is imputed to the prosecutors.").

This court hasn't addressed whether a SANE nurse is a member of the prosecution for *Brady* purposes,[3] and we've found only one other court that has. In *People v. Uribe*, the California Court of Appeal found a *Brady* violation when the prosecution didn't disclose a videotape of a sexual assault exam. 76 Cal. Rptr. 3d 829, 832 (Cal. Ct. App. 2008). The court characterized the exam as investigative in nature, noting that a "major purpose of the examination was to determine whether the allegation could be corroborated with physical findings." *Id.* at 844. The court also noted that police initiated the exam as part of a criminal investigation, concluding those conducting the exam acted on the government's behalf. *Id.* at 845-46. Under those circumstances, the court ultimately imputed the hospital personnel's knowledge of the video's existence to the prosecution because those responsible for conducting

---

[3] Several courts addressing claims in non-*Brady* contexts have concluded that SANE nurses who conduct sexual abuse exams are acting as agents of law enforcement. *See, e.g.*, *State v. Miller*, 264 P.3d 461, 488 (Kan. 2011) ("We conclude the SANE was acting as an agent of law enforcement when performing the role of collecting evidence."); *aff'g* 208 P.3d 774, 786 (Kan. Ct. App. 2009) (concluding primary purpose of SANE nurse examination "was to collect and preserve evidence for later use in the prosecution of a crime, not for medical diagnosis or treatment"); *Hartsfield v. Commonwealth*, 277 S.W.3d 239, 244 (Ky. 2009) ("The SANE nurse under KRS 314.011(14) is made available to 'victims of sexual offenses,' which makes the SANE nurse an active participant in the formal criminal investigation."); *Medina v. State*, 143 P.3d 471, 476 (Nev. 2006) (concluding SANE nurse "was a police operative" because she gathered evidence for prosecution).

11

the exams "were part of the 'prosecution team' for *Brady* purposes." *Id.* at 846; *see also State v. Farris*, 656 S.E.2d 121, 126 (W. Va. 2007) (concluding that forensic psychologist who interviewed child sex abuse victim at police's request "became part of the prosecutor's investigation team" for *Brady* purposes).

Here, as in *Uribe*, Ridling examined M.K. "at the behest of" law enforcement as part of a criminal investigation into M.K.'s allegation that McCormick sexually abused her. Aplee. Br. 20. Moreover, Ridling explicitly testified that she kept a record of the exam to prepare herself to testify later. Under these circumstances, we agree that Ridling was part of the prosecution team for *Brady* purposes. Accordingly, we must impute her knowledge of her own lack of certification to the prosecutor. *See Smith*, 50 F.3d at 824; *Uribe*, 76 Cal. Rptr. 3d at 846. And because the prosecutor didn't disclose Ridling's lack of certification to the defense, we conclude the prosecution suppressed evidence.

In reaching this conclusion, we emphasize its essence—i.e., that Ridling was part of the prosecution team because she acted at the request of law enforcement in the pre-arrest investigation of a crime. *See Uribe*, 76 Cal. Rptr. 3d at 845-46. We do not hold today that all medical professionals treating survivors of sexual abuse are automatically members of the prosecution team for *Brady* purposes. Nor have we been asked to decide whether an expert who had no pre-charge investigatory role may be a member of the prosecution team for *Brady* purposes. *See United States v. Skelly*, 442 F.3d 94, 100 (2d Cir. 2006) (concluding prosecution's duty to disclose "does not

12

extend to the knowledge of an ordinary expert witness who was not involved with the investigation of the case"). In short, our holding is limited to the facts before us.

### B. The suppressed evidence was material.

McCormick argues the suppressed evidence was material, asserting that if the jurors had known about Ridling's false testimony, they "might not have believed her at all." Aplt. Br. 39. The state disagrees, arguing that Ridling's expired certification isn't material because her testimony was "a small part of the evidence" against McCormick. Aplee. Br. 26.

Evidence is material if there's a reasonable likelihood the evidence could have affected the jury's judgment. *Wearry v. Cain*, 136 S. Ct. 1002, 1006 (2016). Thus, to prevail on his *Brady* claim, McCormick doesn't have to prove it's "more likely than not" that the jury would have acquitted him had it known about the suppressed evidence. *See id.* (quoting *Smith v. Cain*, 132 S. Ct. 627, 630 (2012)). Rather, he only has to show that the new evidence demonstrating Ridling's lack of certification is enough to undermine confidence in the verdict. *See id.*

Under the facts of this case, we agree there's a reasonable likelihood the suppressed evidence would have affected the jury's judgment because Ridling had a critical role in the trial and her credibility was essential to the state's case.

First, there's no question that Ridling bolstered her own credentials and credibility to the jury by testifying that her certification was current and she had completed the continuing education hours necessary to keep it current. This was false. The record includes a finding by the Texas Board of Nursing that Ridling

13

misrepresented herself as a certified SANE nurse. In fact, Ridling admitted as much in her response to the board, stating that in a different 2007 trial she "erroneously" testified that she "was certified by the Texas Attorney General's office." R. vol. 1, 284. If McCormick could have used the suppressed evidence to expose Ridling's false testimony about her credentials, the jury likely would have given Ridling's other testimony less weight, or even disregarded it entirely.

Had it done so, it likely would have affected the jury's decision. Ridling's testimony was critical because she purported to provide an expert's opinion of the only physical evidence presented. Ridling—who the prosecutor touted as "probably the most important corroborating witness"—was in fact the only witness who provided direct evidence to corroborate M.K.'s testimony. R. vol. 2, 613. Other witnesses simply repeated the allegations M.K. made to them when she was 12. Ridling, on the other hand, provided the type of forensic evidence that's particularly significant in "he-said-she-said" cases like this one. Most significantly, Ridling testified she found evidence of two tears in M.K.'s hymen, and Ridling maintained the only possible cause of those tears was "some kind of penetration." R. vol. 2, 965. And on cross-examination, she adamantly reiterated that her exam proved penetration occurred. Finally, Ridling authenticated three photographs and derived from them incriminating conclusions that wouldn't necessarily have been obvious to the jury. In short, Ridling's testimony wasn't a small part of the state's case.

Finally, while certainly not dispositive, we note that two jurors essentially said they needed Ridling's testimony to help them decide whether to convict McCormick.

14

During jury selection, one juror indicated that M.K.'s testimony alone wouldn't be enough for her to convict McCormick and that she would expect corroborating testimony. And another juror said it would help if Ridling's examination was consistent with M.K.'s account. These comments, considered in connection with Ridling's testimony, lend additional support to our conclusion that Ridling's credibility was essential to the state's case and that the suppressed evidence was material.

Under these circumstances, there's a reasonable likelihood that the suppressed evidence of Ridling's lack of certification affected the jury's judgment. *See Wearry*, 136 S. Ct. at 1006. In fact, we're not the first court to reach that conclusion. *See Nguyen v. State*, No. 05-07-01775-CR, 2009 WL 755412, at *3 (Tex. App. Mar. 24, 2009) (unpublished) (concluding there's a reasonable likelihood that Ridling's false testimony about her credentials as an expert "could have affected the judgment of the jury" when Ridling was the only prosecution witness who provided independent evidence beyond alleged child victim's version of events). Because the suppressed evidence was material,[4] we hold the prosecutor's failure to disclose that evidence to defense counsel violated McCormick's due process rights under *Brady*.

---

[4] The state urges us to find that Ridling's false testimony wasn't material as we did in another habeas case. *See Pruitt v. Parker*, 388 F. App'x 841, 846 (10th Cir. 2010) (unpublished) (denying certificate of appealability sought by a habeas petitioner convicted of child sexual abuse based, in part, on Ridling's testimony). But in *Pruitt*, we incorporated AEDPA deference into our review of the OCCA's determination that evidence of Ridling's lapsed credentials wasn't material in light of the state's other evidence. *Id.* at 844, 846. Because we're not bound by such deference here, *see Hain*, 287 F.3d at 1229, *Pruitt* isn't persuasive.

15

**CONCLUSION**

We conclude that (1) the prosecution suppressed evidence of Ridling's lack of certification, (2) the evidence was favorable to McCormick, and (3) the evidence was material. Because the state violated McCormick's due process rights under *Brady*, we reverse the district court's decision denying relief and grant McCormick's § 2254 petition for a writ of habeas corpus as to his conviction for child sexual abuse, subject to the state's right to retry him within a reasonable time. *See Sharp v. Rohling*, 793 F.3d 1216, 1240-41 (10th Cir. 2015).