[Cite as *State v. Durdin*, 2014-Ohio-5759.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 14AP-249 |
| v. | : | (C.P.C. No. 13CR-2945) |
| Henry A. Durdin, Jr., | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 30, 2014

*Ron O'Brien*, Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee.

*Blaise G. Baker*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} Defendant-appellant, Henry A. Durdin, Jr., appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty, pursuant to jury verdict, of one count of kidnapping, a felony of the first degree, one count of rape, a felony of the first degree, one count of aggravated robbery, a felony of the first degree, one count of domestic violence, a felony of the fourth degree, one count of having a weapon while under disability, a felony of the third degree, as well as firearm specifications and a sexually violent predator specification attached to the various charges. Because (1) the trial court violated defendant's Confrontation Clause right by admitting the victim's testimonial statement, and (2) the record contained insufficient evidence to support the aggravated robbery conviction and the three-year firearm specifications attached to the rape and aggravated robbery charges, we reverse in part and remand.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2}   The state indicted defendant on May 31, 2013 for one count of kidnapping with a firearm specification, in violation of R.C. 2905.01, one count of rape with a firearm and a sexually violent predator specification, in violation of R.C. 2907.02, one count of aggravated robbery with a firearm specification, in violation of R.C. 2911.01, one count of domestic violence with a firearm specification, in violation of R.C. 2919.25, and one count of having a weapon while under disability, in violation of R.C. 2923.13. The events giving rise to the indictment occurred between May 22 and 23, 2013.

{¶ 3}   In the early morning hours of May 23, 2013, the victim called her sister, Patricia Daniels. Ms. Daniels testified that she was asleep and the phone call woke her up. Ms. Daniels stated that the victim was "screaming in the phone, sobbing in the phone, just like -- she was so upset, and she said [defendant]," who was the victim's ex-husband, "had raped her." (Tr. 39.) The victim told her sister that she was on her way to the hospital because she had been "raped and duct taped" and defendant "did it." (Tr. 40-41.) The victim also told her sister that defendant "had her gun," and Ms. Daniels said her sister was "afraid" because defendant "had taken [the victim's] gun from her." (Tr. 41.) The victim did not testify at trial.

{¶ 4}   Lindsey McNichols, a Sexual Assault Nurse Examiner ("SANE") who interviewed the victim at The Ohio State University Hospital East, did testify at trial. The SANE nurse stated that the victim arrived at the hospital at 1:00 a.m. on May 23, 2013. The general emergency room staff took a general medical history and did an assessment of the victim's immediate medical needs. The victim then spoke with Detective David Bobbitt, a detective with the sexual assault unit of the Columbus Police Department. After speaking with the detective, the victim met with the SANE nurse at 3:10 a.m. (State's exhibit E.)

{¶ 5}   The SANE nurse explained that she had received "special training in how to care for a sexual assault patient, how to do the exam on evidence collection, and maintaining chain of custody." (Tr. 47.) The SANE nurse stated that she has performed between 40 to 50 sexual assault examinations since becoming qualified as a SANE nurse in 2010. The victim informed the SANE nurse that she had been raped, and identified

defendant as her assailant. The SANE nurse related the victim's narrative history of the incident, stating:

> She was grabbed by her hair and hit on the right side of her face with a fist, and then hit on the left side, and then dragged and put on her stomach. Tied her hands and feet with shoestrings. And then she said that there was a gun involved and the safety was taken off the gun and there was sex. And that her hands and feet were untied during that time. But after that, she was able to shower but then duct taped. She said that she was duct taped by her hands, legs, and then around her mouth. And after that, she said that the tape was yanked off of her face because she was trying to talk and wasn't able to be heard. And then she said that she faked like something was wrong with her heart, and she was told to take two of her anxiety pills and given those. And after that, she was given something to eat. And then said that she was able to become free and convinced her assailant to go get some mental health care and she drove him there and then came to the hospital.

(Tr. 61-62.)

{¶ 6} In examining the victim, the SANE nurse discovered "two abrasions to her left cheek," as well as "abrasions and swelling to her lower lip mainly on the left side. * * * And then she had on both of her wrists, she had some purple areas with abrasions that were kind of reddened." (Tr. 66.) The nurse also noted a thin white discharge coming out of the victim's vaginal vault. The SANE nurse explained that she had been trained on how to collect evidence for the "sexual assault evidence collection kit" issued by the Ohio Department of Health. (Tr. 81.) The SANE nurse took a swabbing of the white discharge, and swabbed other areas of the victim's body and clothing for the evidence collection kit. Forensic DNA testing conducted on the items in the kit revealed that the victim's vagina and underwear contained semen, and the semen yielded a DNA profile consistent with both defendant and the victim.

{¶ 7} Detective Bobbitt testified that he was already at the hospital investigating an unrelated case when a nurse informed him about this case. The detective interviewed the victim at the hospital, and the victim indicated that she had dropped defendant off at a mental health care facility on her way to the hospital. After speaking with the victim,

the detective went to the mental health care facility, and the staff at the facility informed the detective that defendant had left the facility 45 minutes before the detective arrived. Detective Bobbitt then went to the victim's apartment to look for "some specific pieces of evidence." (Tr. 103.) Detective Bobbitt discovered "white shoelaces * * * tied in knots, the same with the black shoelaces, and * * * strands of duct tape, wrinkled duct tape" in a trash can at the apartment. (Tr. 110.) DNA material from both defendant and the victim was present on the shoestrings and the duct tape. Detective Bobbitt indicated that, although he searched for a gun at the victim's apartment, he did not find one.

{¶ 8} Officers apprehended defendant the following morning. Defendant did not have a gun on him when he was apprehended. Detective Bobbitt testified that he listened to a phone call defendant had made to the victim while in jail. In the recorded phone conversation, which was played for the jury, the victim says, "I begged you not to do it," and the defendant responds saying "it wasn't me, it was the devil." (Tr. 122.)

{¶ 9} Defendant testified in his own defense. Defendant admitted that he had a prior domestic violence conviction against the victim from 2010, and that he had a prior robbery conviction from 2004. Defendant explained that, the day prior to the incident, he had consensual sex with the victim, "and then that's when the duct tape and shoestrings came into the play," as their consensual sex involved "role playing, bondage and stuff like that." (Tr. 173.) Defendant stated that he and the victim "had lots of three-somes and bondages" over the course of their relationship. (Tr. 175.) Defendant explained that the morning after they had consensual sex, the victim woke up and "she wanted the rent money and, you know, the light bill money, and [as he] already spent it on heroin, she got mad and we got into it, we started fighting and arguing real bad." (Tr. 174.) Defendant admitted that he "hit her, [he] spit on her, [he] pulled her hair and [he] slapped her" as the couple fought. (Tr. 176.) Defendant testified that the victim dropped him off at the mental health care facility later that evening, because she said he needed help. Defendant stated that he "did not rape" the victim, that he did not see a gun at the victim's house, and that he never possessed a gun. (Tr. 175.) Defendant stated that he believed the victim "owned a pellet gun," but not a real gun. (Tr. 175.)

{¶ 10} The jury found defendant guilty of all counts and specifications charged in the indictment. The court held a sentencing hearing on March 18, 2014. The court

informed defendant that he would be classified as a Tier III sex offender, with lifetime registration duties. The court merged the kidnapping charge in Count 1 of the indictment into the aggravated robbery charge in Count 3 of the indictment for purposes of sentencing. The court classified defendant as a sexually violent predator and sentenced defendant to 11 years to life on the rape conviction, with an additional 3 consecutive years for the firearm specification, 3 years on the aggravated robbery conviction, with an additional 3 consecutive years on the firearm specification, 18 months on the domestic violence conviction, and 2 years on the having a weapon while under disability conviction. The court ordered that the sentence on the domestic violence charge be run concurrently with the sentence on the having a weapon while under disability charge, and that the sentences on the rape and aggravated robbery charges be run consecutively to each other and to all specifications, for a total period of incarceration of 20 years to life.

## II. ASSIGNMENTS OF ERROR

{¶ 11} Defendant appeals, assigning the following errors:

> I. The trial court violated Defendant-Appellant's rights to due process and a fair trial when in the absence of sufficient evidence and against the manifest weight of the evidence the trial court found Defendant-Appellant guilty of rape, kidnapping with sexually violent predator specification, aggravated robbery, having a weapon while under disability, and firearm specifications.
>
> II. The trial court erred in denying Defendant-Appellant's Motion in Limine when the victim's statements to medical personnel, contained in her medical records, were not admissible under Evid. R. 803(4).

{¶ 12} For ease of discussion, we address defendant's assignments of error out-of-order.

## III. SECOND ASSIGNMENT OF ERROR – CONFRONTATION CLAUSE

{¶ 13} Defendant's second assignment of error asserts that the trial court erred in denying his motion in limine. Prior to the start of trial, defense counsel made a motion in limine asking the court to exclude certain aspects of the SANE nurse's testimony. Defense counsel noted that the victim's "talk of the gun," was testimonial evidence

which should be excluded from trial. (Tr. 17.) The court stated that it was taking the matter under advisement, and would "respond appropriately to any objections that are made." (Tr. 18.) When the SANE nurse began to testify about the victim's narrative history, defendant renewed his objection to the SANE nurse's testimony.

{¶ 14} A motion in limine is a request " 'that the court limit or exclude use of evidence which the movant believes to be improper, and is made in advance of the actual presentation of the evidence to the trier of fact, usually prior to trial.' " *Gordon v. Ohio State Univ.,* 10th Dist. No. 10AP-1058, 2011-Ohio-5057, ¶ 82, quoting *State v. Winston,* 71 Ohio App.3d 154, 158 (2d Dist.1991). " 'The motion asks the court to exclude the evidence unless and until the court is first shown that the material is relevant and proper.' " *Gordon* at ¶ 82, quoting *Winston.* Thus, because a trial court's decision on a motion in limine is a ruling to admit or exclude evidence, our standard of review on appeal is whether the trial court committed an abuse of discretion that amounted to prejudicial error. *Id.*

{¶ 15} Defendant contends that the SANE nurse's testimony relating the victim's narrative history violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington,* 541 U.S. 36, 53-54 (2004). This "bedrock procedural guarantee applies to both federal and state prosecutions." *Id.* at 42. We review the question of whether the trial court violated an individual's Confrontation Clause rights under a de novo standard. *State v. Rinehart,* 4th Dist. No. 07CA2983, 2008-Ohio-5770, ¶ 20.

{¶ 16} *Crawford* did not expressly define "testimonial statements," but it indicated the term at least included ex parte in-court testimony or its functional equivalent, extrajudicial statements contained in formalized testimonial materials such as affidavits and depositions, and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be

available for use at a later trial." *Id.* at 51-52. Regarding statements made to the police, the Supreme Court has held that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency," but that statements are testimonial when the circumstances indicate that there "is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). *See also State v. Siler*, 116 Ohio St.3d 39, 2007-Ohio-5637, ¶ 2.

{¶ 17} In *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, the Supreme Court of Ohio held that statements made by an adult victim of sexual assault to a nurse working in a specialized hospital unit for sexual-assault victims were nontestimonial. The court adopted the "objective witness" test for statements made to non-law enforcement officials, and held that "a testimonial statement includes one made 'under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " *Id.* at paragraph one of the syllabus, following *Crawford*.

{¶ 18} The victim in *Stahl* was sexually assaulted by her boyfriend's former boss. The victim went to the police department following the incident where she made a statement regarding the assault and identified her assailant to the police. An officer then transported the victim to the Developing Options for Violent Emergencies ("DOVE") unit at a local hospital, which specialized "in health-care services for victims of sexual assault and domestic disturbances and provide[d] essentially the same services as a traditional emergency room but in a more efficient and timely fashion." *Id.* at ¶ 2. At the DOVE unit, the victim signed a consent form agreeing to release any evidence to a law enforcement agency for use in a later prosecution. The victim made a statement to a nurse in the DOVE unit, describing the incident and identifying her assailant. The victim died five weeks after the incident due to an unrelated seizure disorder, and the defendant asserted that the victim's identification of him to the nurse was a testimonial statement.

{¶ 19} The court noted that, whereas "*Crawford* involved the admissibility of direct police interrogations," the statement at issue in *Stahl* was "one made to a medical professional at a medical facility for the *primary* purpose of receiving proper medical treatment and not investigating past events related to criminal prosecution." (Emphasis sic.) *Stahl* at ¶ 17, 25. The court held that, where the victim "makes a statement to a police officer identifying the accused, and subsequently presents herself for a medical examination for purposes of gathering evidence of the crime and repeats the identification," the identification "is not made 'under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,' because the declarant had previously made the identifying statement to the police." *Id.* at ¶ 46, quoting *Crawford* at 53. The court also found that the identity of the assailant was medically relevant, as the perpetrator's identity could help the medical professionals in "determining whether the assailant had any communicable diseases and whether any specified course of treatment might therefore be appropriate." *Id.* at ¶ 46.

{¶ 20} In *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, the court held that "[s]tatements made to medical personnel for purposes of diagnosis or treatment are not inadmissible under *Crawford*, because they are not even remotely related to the evils that the Confrontation Clause was designed to avoid." *Id.* at ¶ 63. *Compare* Evid.R. 803(4) (a statement "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" will not be excluded as hearsay).

{¶ 21} In *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, the court analyzed whether statements made by a child sexual assault victim to a social worker at a hospital's child advocacy center violated the Confrontation Clause. The court held that the interview of the child at the child advocacy center served "dual purposes: (1) to gather forensic information to investigate and potentially prosecute a defendant for the offense and (2) to elicit information necessary for medical diagnosis and treatment of the victim." *Id.* at ¶ 33. The court held that statements "that are made for medical diagnosis and treatment are nontestimonial and are admissible without offending the Confrontation Clause," but that statements which "serve primarily a forensic or

investigative purpose are testimonial and are inadmissible pursuant to the Confrontation Clause when the declarant is unavailable for cross-examination." *Id.* at paragraphs one and two of the syllabus.

{¶ 22} The court held that the child's statements "that described the acts that Arnold performed," including statements that Arnold "touched her 'pee-pee,' that Arnold's 'pee-pee' went inside her 'pee-pee,' that Arnold's 'pee-pee' touched her 'butt,' * * * and that Arnold's mouth touched her 'pee-pee,' " were all statements which were necessary for the proper medical diagnosis and treatment of the child and were thus nontestimonial. *Id.* at ¶ 38. The court held that, "[i]n eliciting these medically necessary statements, [the social worker] acted as an agent of the nurse practitioner who examined" the child, "not of the investigating police officers." *Id.* at ¶ 40.

{¶ 23} The court further found that many of the child's statements were not necessary for medical diagnosis or treatment and related primarily to the state's investigation. These included the child's statements "that Arnold shut and locked the bedroom door before raping her; her descriptions of where her mother and brother were while she was in the bedroom with Arnold, of Arnold's boxer shorts, of him removing them, and of what Arnold's 'pee-pee' looked like." *Id.* at ¶ 34. The court held that the social worker acted as an agent of the police in obtaining these statements. As the "primary purpose of that portion of the interview was not to meet an ongoing emergency but, rather, to further the state's forensic investigation," these statements were "testimonial in nature and their admission without a prior opportunity for cross-examination [was] prohibited by the Confrontation Clause." *Id.* at ¶ 36, citing *Crawford* at 68.

{¶ 24} We note that a number of other jurisdictions have held that statements made to a SANE nurse are testimonial in nature and barred by the Confrontation Clause. *See Hartsfield v. Commonwealth,* 277 S.W.3d 239, 244-45 (Ky.2009); *State v. Romero,* 141 N.M. 403, 407 (N.M.2007); *Medina v. State,* 122 Nev. 346, 354-55 (Nev.2006); *State v. Cannon,* 254 S.W.3d 287, 305 (Tenn.2008), quoting *Davis* at 822; *State v. Miller,* 42 Kan.App.2d 12, 29 (2009). *Compare State v. Rose*, 12th Dist. No. CA2011-11-214, 2012-Ohio-5607, ¶ 46, 44 (finding that the role of the SANE nurse "was merely for investigative and evidence gathering purposes," where the victim's

statements described details of the rape and were not made for the purpose of medical treatment).

{¶ 25} Turning to the facts of the instant case, the SANE nurse explained that, before a patient sees any member of the SANE team, the patient is "seen and checked in like any other patient would that came in through the ER." (Tr. 49.) The emergency room staff members "get [the patient's] vital signs checked, * * * take a medical history on them * * * and we ask them all the questions that we ask any other patient that would come in for * * * any other complaints." (Tr. 49.) Following the initial medical check up, the patient then meets with the SANE nurse who obtains "consent from [the patient] to be able to collect evidence, take pictures, and release any records to the proper law enforcement agency." (Tr. 50.) The SANE nurse then takes "an assault-related history" from the victim, conducts a "head-to-toe examination and assessment," and then begins the evidence collection part of the exam, which involves swabbing the victim's body and clothing for DNA material. (Tr. 50-51.) Following the evidence collection, the SANE nurse provides the patient "with medication to prevent sexually transmitted infections and/or pregnancy." (Tr. 50.)

{¶ 26} Following *Arnold*, we must examine the statements the victim made to the SANE nurse. Most of the victim's statements to the SANE nurse related to medical diagnosis or treatment. For example, the statements that "[s]he was grabbed by her hair and hit on the right side of her face with a fist," that she was "hit on the left side, and then dragged and put on her stomach," and that "there was sex," related information regarding events which had happened to the victim's body, and were thus necessary for proper medical diagnosis and treatment. Similarly, the victim's statements indicating that defendant "[t]ied her hands and feet with shoestrings," that she was "duct taped by her hands, legs, and then around her mouth," and that the "tape was yanked off her face," were all statements which related to medical treatment and diagnosis, as the nurse documented the abrasions, redness, and swelling present on the victim's wrists and lip from these restraints. (Tr. 61.) As these statements related to medical diagnosis and treatment, they were nontestimonial.

{¶ 27} In contrast, the victim's statement that "there was a gun involved and the safety was taken off the gun," was not necessary for medical diagnosis or treatment. (Tr.

61.) Unlike *Stahl*, where the court found that the identity of the assailant served a medical purpose, there was no medically relevant reason to inform the SANE nurse herein about the gun. *See Id.* at ¶ 46. The victim did not state that she had been shot, that defendant hit her with the gun, or that defendant had touched her body with the gun in any way. The statement about the gun did not describe any activity, sexual or otherwise, that would cause a medical professional to be concerned about the possibility of injuries or diseases. Moreover, the general emergency room staff assessed the victim's immediate medical needs upon her entrance to the hospital. Thereafter, before speaking with the SANE nurse, the victim signed a consent form whereby she agreed to "release the records and items obtained during this examination for the purpose of, but not limited to, prosecution," to the Columbus Police Department. (State's exhibit E.) Accordingly, an objective witness in the victim's position would have reasonably believed that the statement about a gun being involved and the safety being off would have been available for use at a later criminal trial.

{¶ 28} Additionally, while the court in *Stahl* noted that the victim had already identified her assailant to the police, there is no evidence in the record indicating that the victim herein told the police that defendant possessed a gun during the rape. Detective Bobbitt testified that he went to the victim's house looking for a handgun, and that he searched in some places where the victim said it was and "where it was allegedly placed by [defendant]." (Tr. 112.) This evidence establishes, at most, that defendant potentially possessed the gun and set it down at some point when he was in the house. It does not support the inference that defendant possessed the gun while committing the rape offense.

{¶ 29} The victim's statement to the SANE nurse about the gun related primarily to the state's investigation and not to medical diagnosis or treatment. The victim did not make this statement under circumstances objectively indicating that the primary purpose of the interview was to enable police assistance to meet an ongoing emergency, as it described a past event which occurred the prior day. The statement served a forensic or investigative purpose, as it established a fact which was relevant to a later prosecution. Accordingly, the victim's statement about the gun to the SANE nurse was

testimonial. As defendant did not have a prior opportunity to cross-examine the victim, the trial court erred by admitting the statement regarding the gun into evidence.

{¶ 30} Admission of testimonial statements against a party is a constitutional error when that party does not have the opportunity to cross-examine the declarant. *Arnold* at ¶ 36, citing *Crawford* at 68. However, not all constitutional errors are prejudicial. We may decline to notice a constitutional error if the error is harmless beyond a reasonable doubt. *State v. Love*, 4th Dist. No. 05CA2838, 2006-Ohio-1824, ¶ 34, citing *Chapman v. California*, 386 U.S. 18, 24 (1967). "[E]rror is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." *State v. Williams*, 6 Ohio St.3d 281 (1983), paragraph six of the syllabus.

{¶ 31} The SANE nurse's testimony regarding the presence of a gun during the rape does not amount to harmless error. Because the victim did not testify in this case, the nurse's testimony was the only evidence in the record indicating that defendant possessed a gun during the rape. The presence and use of the firearm during the rape were facts which were necessary to establish the firearm specification attached to the rape charge. Accordingly, the admission of the testimonial statement regarding the gun was not harmless error.

{¶ 32} Based on the foregoing, defendant's second assignment of error is sustained.

## IV. FIRST ASSIGNMENT OF ERROR – SUFFICIENCY AND MANIFEST WEIGHT

{¶ 33} Defendant's first assignment of error asserts that neither sufficient evidence nor the manifest weight of the evidence support his convictions. Defendant addresses his convictions for kidnapping, rape, and the sexually violent predator specification separately from his convictions for aggravated robbery, having a weapon while under disability, and the firearm specifications attached to the rape and aggravated robbery charges. Defendant does not challenge his domestic violence conviction.

{¶ 34} Whether evidence is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of

adequacy. *Id.* The evidence is construed in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus; *State v. Conley*, 10th Dist. No. 93AP-387 (Dec. 16, 1993). When reviewing the sufficiency of the evidence the court does not weigh the credibility of the witnesses. *State v. Yarbrough,* 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79.

{¶ 35} Sufficiency of the evidence and manifest weight of the evidence are distinct concepts; they are "quantitatively and qualitatively different." *Thompkins* at 386. When presented with a manifest weight argument, we engage in a limited weighing of evidence to determine whether sufficient competent, credible evidence permits reasonable minds to find guilt beyond a reasonable doubt. *Conley. Thompkins* at 387 (noting that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"). In the manifest weight analysis the appellate court considers the credibility of the witnesses and determines whether the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1983). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver,* 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

*A. Kidnapping, Rape and Sexually Violent Predator Specification*

{¶ 36} To convict defendant of rape, the state was required to prove that defendant engaged in sexual conduct with the victim, purposely compelling her to submit by force or threat of force. R.C. 2907.02(A)(2). Sexual conduct includes "vaginal intercourse between a male and female." R.C. 2907.01(A). "Force" includes "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). A person acts purposely when it is their specific

intention to cause a certain result, or when it is their specific intention to engage in conduct of that nature. R.C. 2901.22(A).

{¶ 37} The evidence demonstrates that the victim called her sister "screaming" and "sobbing" and said that defendant "had raped her." (Tr. 39.) *See* Evid.R. 803(2) (defining the "excited utterance" exception to the hearsay rule; however, in the instant action, defendant did not object to Ms. Daniels' testimony). At the hospital, the victim told the SANE nurse that defendant had hit and dragged her, tied her feet and hands with shoestrings, and duct taped her. The SANE nurse indicted that the victim had described being raped. The forensic evidence revealed that defendant's semen was present in the victim's vagina. Construing this evidence in favor of the state, there was sufficient evidence in the record to support the rape conviction.

{¶ 38} Defendant asserts that his rape conviction is against the manifest weight of the evidence because there was no evidence that he "purposely compelled his ex-wife to submit to sexual conduct and restrained her by force or threat of force." (Appellant's brief, 15.) "A defendant purposely compels another to submit to sexual conduct by force or a threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit." *State v. Schaim*, 65 Ohio St.3d 51 (1992), paragraph one of the syllabus. "A threat of force can be inferred from the circumstances surrounding sexual conduct." *Id.* The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. *See State v. Eskridge*, 38 Ohio St.3d 56 (1988). "As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." *Id.* at 59.

{¶ 39} Defendant asserts, citing to his own testimony, that he had engaged in consensual sexual activity with his ex-wife which included bondage, and that his ex-wife fabricated the rape allegation the following morning. However, the jury was under no obligation to believe any portion of defendant's testimony. *Raver* at ¶ 24. The jury was in the best position to judge defendant's demeanor and credibility, and the jury did not find defendant credible. The evidence readily demonstrates that defendant beat the victim quite severely, and that he had vaginal intercourse with the victim. This evidence, coupled with the victim's statement to her sister and the SANE nurse that defendant had

raped her, allowed the jury to infer that defendant purposely compelled the victim to submit to sexual conduct by force or the threat of force. *See Jenks* at paragraph one of the syllabus (direct and circumstantial evidence have like probative values). Reviewing the record, we cannot say that the jury clearly lost its way in believing the state's evidence over defendant's testimony.

{¶ 40} To convict defendant of kidnapping, the state was required to prove that defendant, by force, threat, or deception, restrained the victim's liberty with the purpose to terrorize her, inflict serious physical harm on her, and/or engage in sexual activity with her against her will. *See* R.C. 2905.01(A)(3) and (4). Sexual activity includes sexual conduct. *See* R.C. 2907.01(C). Restraint of liberty means " 'to limit one's freedom of movement in any fashion for any period of time.' " *State v. Martin*, 10th Dist. No. 02AP-33, 2002-Ohio-4769, ¶ 32, quoting *State v. Wingfield*, 8th Dist. No. 69229 (Mar. 7, 1996). *See also State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 197, quoting *State v. Powell*, 49 Ohio St.3d 255, 262 (1990) (Emphasis sic) (noting that " 'R.C. 2905.01(A)(4) requires only that the restraint or removal occur for the purpose of non-consensual sexual activity – *not that sexual activity actually take place*' ").

{¶ 41} The victim told her sister that defendant had raped her. The victim told the SANE nurse that defendant had tied her hands and feet with shoestrings, untied her and raped her, and then duct taped her hands, legs, and mouth. Construing this evidence in the state's favor, there was sufficient evidence to support the finding that defendant restrained the victim's liberty with the purpose to engage in sexual activity with her against her will when he tied her hands and feet with shoestrings before he raped her. The jury did not lose its way in convicting defendant of kidnapping.

{¶ 42} Regarding the sexually violent predator specification, R.C. 2971.01 provides that a " '[s]exually violent predator' means a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." R.C. 2971.01(H)(1). A sexually violent predator specification must be charged in an "indictment, count in the indictment, or information charging the violent sex offense." R.C. 2941.148(A). *See also State v. Taylor*, 8th Dist. No. 100315, 2014-Ohio-3134, ¶ 67 (noting that R.C. 2907.01(H)(1) thus allows "for the inclusion of a sexually violent predator specification in the indictment of one being

charged for the first time with a sexually violent offense"). Rape is a sexually violent offense.

{¶ 43} The facts of the case support the jury's finding that defendant was a sexually violent predator. Defendant beat his ex-wife, tied her up with shoestrings, raped her, and then duct taped her. Defendant had a prior domestic violence conviction against this same victim, and a prior robbery conviction from 2004. Defendant admitted that the "accusation" in the 2004 case was "that [he] tied up a woman." (Tr. 180.) The prosecutor noted that defendant was also charged with rape in the 2004 case, based on the allegation that he had "forced sex with" the woman he tied up, but defendant denied that allegation. (Tr. 180.) In the 2004 action, defendant pled guilty to the robbery charge and the court dismissed the remaining charges. Based on defendant's prior history and the egregiousness of the rape in the instant action, we cannot conclude that defendant is not likely to commit future sexually violent offenses. *See* R.C. 2971.01(H)(2). The jury did not lose its way in designating defendant as a sexually violent predator.

*B. Aggravated Robbery, Having a Weapon while Under Disability, and Firearm Specifications*

{¶ 44} Having a weapon while under disability, in violation of R.C. 2923.13(A)(2), provides that "no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is * * * convicted of any felony offense of violence." R.C. 2923.13(A)(2). A firearm is "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant," and includes an "unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(1). The victim told her sister that defendant "had her gun," and the parties stipulated to defendant's robbery conviction from 2004, which was a felony offense of violence. (Tr. 41.) This evidence was sufficient to support the having a weapon while under disability charge, and we cannot say that the jury clearly lost its way in convicting defendant of the having a weapon while under disability charge.

{¶ 45} Aggravated robbery, in violation of R.C. 2911.01(A)(1), provides, in relevant part, that "[n]o person, in attempting or committing a theft offense, * * * or in

fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it." R.C. 2941.145 provides for a three-year mandatory prison term if an offender "had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." *Compare* R.C. 2941.141 (providing for a one-year mandatory prison term if the offender simply "had a firearm on or about the offender's person or under the offender's control while committing the offense"). To establish a charge containing a firearm, it is not necessary to introduce a gun into evidence, so long as there is some evidence from which the jury might reasonably infer that the defendant used a gun. *State v. Gaines*, 46 Ohio St.3d 65, 69 (1989).

{¶ 46} Ms. Daniels' testimony regarding the gun, in total, was the following:

Q. Did she mention anything else during your phone call?

A. She -- she said he had her gun.

Q. Okay.

A. I didn't know, per se, that she had a gun, but she said he had her gun.

Q. Well, help us understand that. What is she -- what is she saying when she's saying to you, he has my gun?

A. I guess he took it from her.

Q. Did she -- what about that was concerning to her?

A. She was afraid that he had her gun, had taken the gun from her.

Q. So she called and said that Henry raped her and duct taped her and was out there with her gun?

A. Yes.

(Tr. 41.)

{¶ 47} This testimony provided the jury with sufficient evidence to find that defendant had committed a theft offense of the victim's gun. (Tr. 41.) As defendant stole a firearm, he must have had a firearm on his person or under his control while committing the theft offense. *See State v. Osborne*, 9th Dist. No. 13588 (Sept. 21, 1988), citing *State v. Loines*, 20 Ohio App.3d 69, 74 (1984) (concluding that the defendant was properly charged with aggravated burglary and a one-year firearm specification offense because, "[a]s a consequence of stealing the gun from the home, Osborne must have obtained the gun before he left"); *State v. Hous*, 2d Dist. No. 02CA116, 2004-Ohio-666, ¶ 41-42.

{¶ 48} Although Ms. Daniels testified that defendant had taken the victim's gun, she did not provide any more information about the theft. The SANE nurse testified that the victim planned to stay at her niece's house upon her release from the hospital, because "she was not for sure where her gun was" and thus "did not feel safe going back to her home." (Tr. 74.) Detective Bobbitt explained that he went to the victim's house "looking for a handgun," and that he checked "some general places of where [the victim] said it was initially and where it was allegedly placed by [defendant]," but that he never found the gun. (Tr. 112.)

{¶ 49} Thus, while there is testimony from which a jury could conclude that a gun owned by the victim was taken by defendant, the admissible testimony regarding the gun fails to establish that defendant used the gun in a manner which would support the elements of aggravated robbery or the three-year firearm specification attached to the aggravated robbery charge. *See* R.C. 2911.01 and 2941.145. Accordingly, the record does not contain sufficient evidence to support defendant's conviction for aggravated robbery or the firearm specification attached to that charge. As the trial court erred in admitting the SANE nurse's statement regarding the presence of a gun during the rape offense, and the SANE nurse's testimony was the only evidence in the record indicating that defendant possessed a firearm during the rape, the record also does not contain sufficient evidence to support the firearm specification attached to the rape charge.

{¶ 50} While we find that sufficient evidence and the manifest weight of the evidence support defendant's convictions for having a weapon while under disability, rape, kidnapping, and the sexually violent predator specification, we find that the record

does not contain sufficient evidence to support the aggravated robbery conviction or the firearm specifications attached to the aggravated robbery charge or the rape charge. Based on the foregoing, defendant's first assignment of error is sustained in part and overruled in part.

## V. DISPOSITION

{¶ 51} Having sustained defendant's second assignment of error, and sustained in part and overruled in part defendant's first assignment of error, the judgment of the Franklin County Court of Common Pleas is reversed and the case is remanded for proceedings consistent with this decision.

*Judgment affirmed in part and reversed in part;*

*case remanded.*

SADLER, P.J. and DORRIAN, J., concur.

_____