[Cite as *State v. Saxton*, 2016-Ohio-1233.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 15AP-16 |
| v. | : | (C.P.C. No. 14CR-2158) |
| Kelvin D. Saxton, Jr., | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 24, 2016

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee. **Argued:** *Barbara A. Farnbacher*

**On brief:** *Todd W. Barstow*, for appellant. **Argued:** *Todd W. Barstow*

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Kelvin D. Saxton, Jr., appeals from a judgment of conviction entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm in part and reverse in part that judgment and remand the matter to the trial court for resentencing.

## I. Factual and Procedural Background

{¶ 2} In 2013, appellant and A.G. met and began dating. At the time, appellant was 27 and A.G. was 17. Shortly thereafter, they started living together in appellant's father's apartment. When they stayed there, they slept in the living room while

appellant's father slept in his bedroom.[1]  Although the relationship started well, by April 2014, appellant had become worried that A.G. was cheating on him.  During the night of April 14, 2014 and into the early morning hours of the 15th, appellant repeatedly asked her if she had cheated on him.  A.G. denied doing so, but appellant apparently did not believe her so he continued his questioning.  Eventually, appellant held a knife to her throat and told her he would cut her throat if she lied to him about cheating on him.  He began to physically assault her, slapping and punching her with his hands as he continued to question her about her fidelity.  Appellant also bit her face, head-butted her in the nose, and stabbed her in the back with the knife.  All of this occurred in the apartment's living room.

{¶ 3}  At some point during the assault, appellant slammed A.G. up against a wall in the living room and told her to lie down.  She did while appellant continued to kick and punch her and stomp on her head.  He then turned the lights off and told her to perform oral sex on him.  She did not want to but did so because she felt like she had no choice.  Appellant continued to hit her because he said she was not doing a good job.  Appellant then told her to lie down on her back so that he could have sex with her.  Again, she did not want to but she complied.  She did not say anything because she was too scared.  After these events, the two went to sleep.  The next morning, while appellant was in the bathroom, A.G. left the apartment and went to her mother's nearby apartment.  A.G. went to a hospital and was treated for extensive injuries to her head and upper torso, including a puncture wound on her back.

{¶ 4}  As a result of these events, a Franklin County Grand Jury indicted appellant with counts of felonious assault in violation of R.C. 2903.11, kidnapping in violation of R.C. 2905.01, domestic violence in violation of R.C. 2919.25, and two counts of rape in violation of R.C. 2907.02.  Appellant entered a not guilty plea to the charges and proceeded to a jury trial.

{¶ 5}  At his trial, A.G. testified to the above version of events.  In addition, police and medical personnel testified about her injuries and her treatment.  One officer testified that he had "never seen anyone, man or woman, that was beaten that badly" in

---

[1] It was unclear how much time the two stayed at appellant's father's house, but they did spend time at other places and were homeless for some time.

his 11 years of being on patrol. (Tr. 144.) Appellant did not testify, but his father did. He testified that he was awake all night watching television in his bedroom and that he did not hear any disturbance or yelling from the living room.

{¶ 6} The jury found appellant guilty of all counts and the trial court sentenced him accordingly.

## II. Appellant's Appeal

{¶ 7} Appellant appeals and assigns the following errors:

> I. The trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding him guilty of felonious assault; kidnapping; and rape as those verdicts were not supported by sufficient evidence and were also against the manifest weight of the evidence.
>
> II. The trial court erred to the prejudice of appellant by improperly sentencing him to consecutive terms of incarceration in contravention of Ohio's sentencing statutes.
>
> III. The trial court erred to the prejudice of appellant by not merging his convictions for rape.

### A. First Assignment of Error—The Sufficiency and Manifest Weight of the Evidence

{¶ 8} In this assignment of error, appellant contends that his convictions are not supported by sufficient evidence and are also against the manifest weight of the evidence. Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 11, citing *State v. Braxton*, 10th Dist. No. 04AP-725, 2005-Ohio-2198, ¶ 15. "[T]hus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Id.* In that regard, we first examine whether appellant's conviction is supported by the manifest weight of the evidence. *State v. Gravely*, 188 Ohio App.3d 825, 2010-Ohio-3379, ¶ 46 (10th Dist.).

{¶ 9}   The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  *Id.*  An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' "  *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); *State v. Strider-Williams*, 10th Dist. No. 10AP-334, 2010-Ohio-6179, ¶ 12.

{¶ 10} In addressing a manifest weight of the evidence argument, we are able to consider the credibility of the witnesses.  *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6.  However, in conducting our review, we are guided by the presumption that the jury, or the trial court in a bench trial, " 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).  Accordingly, we afford great deference to the jury's determination of witness credibility.  *State v. Redman*, 10th Dist. No. 10AP-654, 2011-Ohio-1894, ¶ 26, citing *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 55. *See also State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus (credibility determinations are primarily for the trier of fact).

{¶ 11} Appellant argues that the evidence does not support his convictions.  In doing so, he points out that A.G. was originally unsure how or when appellant stabbed her and that she did not call appellant's father for help even though he was in the apartment during the assault.  He also argues that she did not testify that appellant forced her to have sex with him.  These points are not persuasive.

{¶ 12} To the extent that appellant is attacking A.G.'s credibility, we reiterate that the jury is in the best position to determine the credibility of witnesses.  *State v. Scott*,

10th Dist. No. 10AP-174, 2010-Ohio-5869, ¶ 17; *State v. Eisenman*, 10th Dist. No. 10AP-809, 2011-Ohio-2810, ¶ 20. The jury obviously chose to believe A.G.'s testimony describing the events. This is within the province of the trier of fact and given the great deference we afford to that determination, we cannot say that the jury lost its way in making that determination so as to create a manifest miscarriage of justice. *State v. Page*, 10th Dist. No. 11AP-466, 2012-Ohio-671.

{¶ 13} Additionally, a defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was offered at trial. *State v. Campbell*, 10th Dist. No. 07AP-1001, 2008-Ohio-4831, ¶ 23. The trier of fact is in the best position to take into account the inconsistencies in the evidence, as well as the demeanor and manner of the witnesses, and to determine which witnesses are more credible. *State v. DeJoy*, 10th Dist. No. 10AP-919, 2011-Ohio-2745, ¶ 27. While appellant points to certain portions of A.G.'s testimony concerning the knife wound that were arguably inconsistent, these inconsistencies do not render the convictions against the manifest weight of the evidence. The jury was aware of these inconsistencies and chose to believe her testimony. This is within the province of the trier of fact. *State v. Conkel*, 10th Dist. No. 08AP-845, 2009-Ohio-2852, ¶ 17-18; *State v. Thompson*, 10th Dist. No. 08AP-22, 2008-Ohio-4551, ¶ 20-21. Additionally, we note that a doctor who treated A.G. testified that the wound was consistent with a knife stab. (Tr. 197.) Further, the shirt A.G. was wearing during the assault had a hole in it where she was stabbed. (Tr. 83.)

{¶ 14} Lastly, although it is correct that A.G. did not use the word "force" in her testimony to describe the events that occurred that morning, that argument overlooks the entirety of her testimony describing the events, which clearly supports a finding that appellant forced her to engage in both fellatio and vaginal sex.[2] During this encounter, appellant severely beat her and threatened her life with a knife. After doing so, he ordered her to perform fellatio on him and then ordered her to lay down so that he could have sex with her. She did not want to perform those acts but did so because she thought he was "going to hit me more or stab me again." (Tr. 90.) She testified that she had no choice but to comply. (Tr. 67.) In light of her testimony, the jury did not lose its way in

---

[2] R.C. 2907.02(A)(2) provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

concluding that appellant used force to compel A.G. to submit. *See State v. Durdin*, 10th Dist. No. 14AP-249, 2014-Ohio-5759, ¶ 38, quoting *State v. Eskridge*, 38 Ohio St.3d 56, 59 (1988) (" 'As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.' ").

{¶ 15} A conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version. *State v. Lindsey*, 10th Dist. No. 14AP-751, 2015-Ohio-2169, ¶ 43, citing *State v. Gale*, 10th Dist. No. 05AP-708, 2006-Ohio-1523, ¶ 19. Here, the jury did not lose its way in deciding to believe the victim's testimony and not appellant's version of events. Accordingly, appellant's convictions are not against the manifest weight of the evidence. This conclusion is also dispositive of appellant's claim that his convictions are not supported by sufficient evidence. *Page* at ¶ 12, citing *McCrary* at ¶ 17. Accordingly, we overrule appellant's first assignment of error.

## B. Second and Third Assignments of Error—Sentencing Issues

{¶ 16} Appellant's second and third assignments of error both address the sentence he received. He first argues that the trial court failed to make the findings required to impose consecutive sentences. We agree.

{¶ 17} In order to impose consecutive terms of imprisonment, a trial court is required to make at least three distinct findings: (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) that one of the following subsections applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4). *See State v. Small*, 10th Dist. No. 14AP-659, 2015-Ohio-3640, ¶ 31, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 26. A word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld. *Id.* at ¶ 31.

{¶ 18} At the sentencing hearing, the trial court noted that the damage appellant caused to the victim was "pretty bad" and "awful." (Sentencing Hrg., Tr. 18.) The trial court also stated that appellant needed to spend "a significant portion [of time in prison] so that you can reflect and so we can keep our society safe. It isn't like this is your first incident where you've had some off --" at which point the appellant interrupted and started to talk. (Sentencing Hrg., Tr. 19.) The trial court returned to that line of thinking but only to say that appellant "had some issues." (Sentencing Hrg., Tr. 20.) These comments are the extent to which the trial court attempted to explain its reasoning. While a trial court need not repeat the required findings verbatim, there must be an indication that the trial court engaged in the analysis. These comments are insufficient to satisfy that requirement.[3] Accordingly, we sustain appellant's second assignment of error.

{¶ 19} Next, appellant argues that his rape convictions, one based on fellatio and the other based on vaginal intercourse, should merge because they were committed close in time as part of one course of conduct and without separate animus or purpose. We disagree.

{¶ 20} Even in light of recent Supreme Court of Ohio case law that addresses merger,[4] this court continues to follow the well-established principle that different forms

---

[3] Appellant did not object to the trial court's failure, but as this court has consistently held, such a failure constitutes plain error. *State v. J.H.S.,* 10th Dist. No. 14AP-399, 2015-Ohio-254, ¶ 17; *State v. Dennison*, 10th Dist. No. 14AP-486, 2015-Ohio-1135, ¶ 16.

[4] *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, and *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, both address the proper analysis a trial court should apply for merger claims. Neither of those cases, however, involved different forms of rape committed against one victim.

of forcible penetration constitute separate acts of rape for which a defendant may be separately punished. *State v. Adams*, 10th Dist. No. 13AP-783, 2014-Ohio-1809, ¶ 11, citing *State v. Accorinti*, 12th Dist. No. CA2012-10-205, 2013-Ohio-4429, ¶ 13; *State v. Daniels*, 9th Dist. No. 26406, 2013-Ohio-358, ¶ 9. Here, appellant committed two different forms of forcible penetration which support two separate convictions for rape. Accordingly, the trial court did not err by not merging those convictions for purposes of sentencing. We overrule appellant's third assignment of error.

{¶ 21} For these reasons, we sustain appellant's second assignment of error and overrule his third assignment of error.

### III. Conclusion

{¶ 22} Having overruled appellant's first and third assignments of error and sustained his second assignment of error, we affirm in part and reverse in part the trial court's judgment of conviction. Accordingly, we remand the matter to the trial court for resentencing.

*Judgment affirmed in part, reversed in part;*
*cause remanded with instructions.*

TYACK and BRUNNER, JJ., concur.